Remsen and another *v.* Brinckerhoff and others.

The Revised Statutes in prescribing the form in which a *last will* and *testament* shall be executed, requiring that the testator at the time of subscribing the will, or at the time of acknowledging it, "Shall *declare* the instrument so subscribed to be his last will and testament," the will is *not valid,* unless there be some *communication* to the witnesses, indicating the intention of the testator to give effect to the instrument as his will; no particular form of words is necessary, but there must be a substantial compliance with the requirements of the statute.

Where it is stated in the *attestation clause* subscribed by the witnesses, that the *testator declared it to be his last will and testament,* the mere want of recollection of the witnesses that the testator made such declaration or otherwise indicated the instrument to be his last will and testament, *it seems* would not be evidence *per se* of a non-compliance with the requirements of the statute, but that in such case to prevent the instrument from having the effect of a will, there must be *affirmative proof* of the want of publication.

Where, however, there is such affirmative proof, as where the testatrix merely signed the instrument and acknowledged it to be her hand and seal for the purposes therein mentioned, without its being read to her, or any declaration being made by her that it was her will, or by any other person that it was her will, and assented to by her: It was held that the instrument was not entitled to be admitted to probate.

The fact that the testatrix noticed that one of the subscribing witnesses had omitted to write the place of his residence opposite his name, and requested that it might be done, was not held a sufficient indication of the intention of the testatrix that the instrument should be regarded as her will.

APPEAL from Chancery. The question in this case arose upon an application to admit to probate a *will* made since the adoption of the Revised Statutes. Dorothea Brinckerhoff made her will, dated 25th February, 1834. It was signed by her in the presence of two witnesses. The *attestation clause* to which the witnesses subscribed their names is in these words: "The writing contained on this one sheet of paper was on the day of the date thereof, subscribed at the end thereof and sealed by the above named Dorothea Brinckerhoff, in the presence of each of us; and the said Dorothea Brinckerhoff at the same time acknowledged to each of us that she subscribed the said writing, and declared it to be her last will and testament; and at her request we have hereunto respectively

1841.

Remsen
*v.*
Brinckerhoff.

subscribed our names as witnesses in her presence, and in the presence of each other; and we have each of us written opposite to our names, our respective places of residence." The witnesses were examined before the surrogate of the county of New-York. One of them testified that the testatrix executed the will in his presence by writing her name, and acknowledging it to be her hand and seal for the purposes therein mentioned; that he subscribed his name to the will in the presence of the testatrix; that the will was not read to the testatrix, nor did he (the witness) read it: he read the last line of the attestation. He did not ask the testatrix whether it was her will, nor did she say it was her will, nor was it stated by any person present that the instrument executed was a will. The other witness testified that he saw the testatrix sign the instrument; she did not say it was her will, but said that she acknowledged it to be her signature for the purposes therein mentioned. She requested him to sign his name as a witness, and after he had written his name as a subscribing witness, she discovered that he had omitted to write his place of residence, and requested that it should be done. This witness testified also that he never saw the testatrix previous to the time of her signing the instrument, and remained in the room where it was signed not longer than ten or fifteen minutes. On this evidence the surrogate admitted the instrument to probate, and the now respondents appealed from his decision to the circuit judge of the first circuit, who, on the 20th March, 1836, confirmed the decree of the surrogate. The respondents then appealed to the Chancellor, who, on the 6th October, 1840, *reversed* the decree of the surrogate, and directed the proceedings to be remitted in order that administration might be granted as in case of intestacy. See the opinion delivered by the Chancellor, 8 *Paige*, 491, *et seq.* From the decree of the Chancellor, the executrixes named in the instrument propounded as a will, appealed to this court. The case was argued here by:

G. *Griffin*, for the appellants.

G. *Brinckerhoff*, for the respondents.

*Points submitted and argued on the part of the appellants:*

I. It was not made a point before the surrogate, that any unfair practice had been used in obtaining the will in question.

II. There are no just grounds of suspicion that the will was obtained unfairly.

III. The law, previous to the Revised Statutes, required that a will should be published by the testator as essential to its validity. *Powell on Devises*, 90. *Cruise's Digest*, *tit. Devise, ch.* 5, § 43. *Ross* v. *Ewen*, 3 *Atk.* 161.

IV. Such publication might have been inferred from circumstances, with the same effect to render the instrument valid as if expressly declared. *Powell on Devises*, 92. *Wallis* v. *Wallis*, 4 *Burn. Ecc. Law*, 114.

V. And this inference would have been raised from very slight circumstances, where it appeared in proof that the testator was not imposed on as to the identity of the instrument executed, but knew it to be his last will and testament.

VI. The section of the Revised Statutes requiring that the testator, at the time of making or acknowledging his subscription, shall declare the instrument so subscribed to be his last will and testament, is only declaratory of the antecedent law; and what would have been a sufficient publication under the antecedent law, is a sufficient declaration under this section of the Revised Statutes.

VII. The statutory declaration may be made by the tongue or the pen, or by sign or action; it may be express or constructive. The section should receive a free and liberal interpretation.

VIII. It is undeniably in proof that the testatrix, in the present case, when she executed the testamentary instrument, well knew its contents.

IX. Knowing the contents of the will, and of the attesting clause as a part thereof, the testatrix, when she presented the will, and asked the witnesses to subscribe the attesting clause, adopted the words of that clause, which state that she " declared the instrument to be her last will and testament," and made the words her own, as much as if she had repeated them with her lips. Whether the attesting witnesses read the clause or not, is immaterial. It is enough that they might and ought to have read it. *Powell on Devises*, 96. *Davy* v. *Smith, Salk.* 395. *Sheers* v. *Glasscock, Salk.* 688. *Casson* v. *Dade,* 1 *Brown C. C.* 99.

X. The testatrix, thus knowing the contents of the testamentary instrument, when she acknowledged in the presence of the witnesses her signature thereto to be her hand and seal, " for the purposes therein mentioned," virtually acknowledged and declared her act of signing to be for the purpose of authenticating her last will. The instrument, on its face, declared itself to be her will; and when she referred to it as explanatory of her act, she adopted the declaration thus apparent on its face as effectually as though she had repeated it orally.

XI. In requesting one of the attesting witnesses to rectify his subscription, by adding thereto his place of residence, the testatrix not only showed that she herself knew the instrument executed to be her will, but also imparted and declared such knowledge to the witnesses. Indeed, the first attesting witness, by voluntarily adding his place of residence, had already evinced that he knew the instrument to be a will. 1. The necessity of adding the place of residence to the signature of a subscribing witness, is a provision peculiar to wills. 2. The presumption of law is, that this provision is known to all concerned. Every one is presumed to know the statutory law of the land.

XII. It is not necessary that the attesting witnesses should actually know the instrument to be a will. It is enough that the testator knows it, and evinces such knowledge, at the time of the execution, by intelligible words,

signs, actions or circumstances, whether such words, signs, actions or circumstances are understood by the attesting witnesses, or not, is immaterial. *White* v. *Trustees of British Museum*, 6 *Bing.* 310. 19 *Com. Law Rep.* 91.

XIII. By giving to the statute in question a literal, strict and harsh construction, the law would destroy many, perhaps most of the wills made in the state, and thus impair one of the most sacred rights of the citizen.

*Points submitted and argued on the part of the respondents:*

I. The instrument of writing was invalid as a will; not having been executed with the formalities prescribed by the Revised Statutes relative to wills. 2 *R. S.* 7, *2nd ed.* 1. It was not in the hand writing of the decedant. 2. It was not read to her, nor did she read it. 3. It was not declared by her, either at the time of subscribing it, or at the time of acknowledging it, to be her last will and testament. 4. The witnesses did not know it was a will. 5. No person present at its execution apprized the witnesses, or either of them, that it was a will. 6. The executrixes and witnesses, were the only persons present at the execution of the instrument.

II. The instrument was in the hand writing of one of the executrixes and a principal legatee; and by the decisions, both in England and in this country, before the Revised Statutes, such an instrument was invalid as a will, unless the same was read by the testator, and an actual publication made by him to the witnesses. *Billinghurst* v. *Sicker*, 1 *Phillemore's R.* 137, 199. 70, 71, 72, 273, *Amer. ed.* *Park* v. *Elliott*, 2 *Phill. R.* 323. *Swett* v. *Boardman*, 1 *Mass. R.* 258. *Bacon's Abr. tit. Statute*, (*J.* 10.) 19 *Com. Law R.* 92.

III. There was not sufficient and competent evidence of the *identity* or mental capacity of the decedant to make a valid will.

1841.

Remsen
*v.*
Brinckerhoff.

After advisement the following opinions were delivered :

By the CHIEF JUSTICE. The question involved in this case is simply as to what constitutes a legal execution of a will, under the provisions of our Revised Statutes. It is a question of first impression, and it is of great importance that it should be early and finally settled.

The weight of authority in England, as abundantly shewn by the cases, very ably reviewed by the Chancellor, and by others that might have been referred to, 1 *Phill. Ev.* 50; 2 *Stark. Ev.* 920, is, that under the 29 *Car*, II, c. 3, § 5, (of which our old statute concerning wills was a copy,) no publication by the testator, in the sense declared by our recent act, was required as essential to the validity of the will; and this, I think, has been regarded as the law in this state before the act of 1830, though I do not find that the attention of the courts has ever been drawn to the particular point in any of the cases. 1 *Wend.* 412, 413.

In *Moodie* v. *Reed*, 7 *Taunton* 355, decided in 1817, Chief Justice Gibbs observed, " that a will, as such, requires no publication; that be the publication what it may, a will may be good without it." Again, he remarked, that he had called on the bar in the course of the argument, to say what publication was ? that he did not wonder he had no answers, for though parties use the term publication, it was a term, in this sense, unknown to the law. But in *Doe* v. *Burdett*, 4 *Ad. & Ellis* 1, decided in 1835, Lord Chief Justice Denman, referring to this case, and to the opinion thus expressed by Chief Justice Gibbs, took particular pains to guard against any inference that he meant to be taken to acquiesce in the correctness of the opinion.

Some elementary writers on the subject, in England, of high authority, assume that publication of some kind is essential, according to the cases under the 22 *Car*. II. Among others, Mr. Cruise, *Tit. Devise* 38, *Ch.* 5, § 43, and Powell. 1 *Jarmans Powell, p.* 90.

It was, doubtless, this contrariety of opinion, and uncertainty upon so important a subject of the law, that led to the act of 1 *Victoria, Ch.* 20, in 1837, by which any other proof of publication is dispensed with, except what arises from the act of signing, or acknowledging the instrument in the presence of the witnesses; and which had previously induced the legislature of this state, in 1830, while revising the law, to declare with equal explicitness the necessity of publication to give validity to the will. Both statutes were intended to settle the law, which is, undoubtedly, of vastly more importance than that it should be settled in favor of one or the other of the conflicting opinions. Ours followed the lead of those which maintained that some sort of publication was necessary; while the English statute has dispensed with it.

Nothing can be more explicit than the law of 1830. 2 *R. S.* 7, § 40. Four distinct ingredients, as declared, must enter into, and together constitute one entire, complex substance, essential to the complete execution: 1. There must be a signing by the testator at the end of the will. 2. The signing must take place in the presence of each of the witnesses, or be acknowledged to have been made, in their presence. 3. The testator, at the time of signing or acknowledging the writing, shall declare it to be his last will; and 4. There must be two witnesses. Now, it is obvious, that every one of these four requisites, in contemplation of the statute, is to be regarded as essential as another; that there must be a concurrence of all to give validity to the act, and that the omission of either is fatal. The *third* sub-division was intended as a statutory declaration of what is understood, in technical language, to be a publication; it is found in juxta-position with the admitted requisites of signing, and witnesses; and can no more be dispensed with in passing upon the validity of an execution, as being in conformity with the law, than either of these. It prescribes, in general terms, what shall amount to publication. The testator must not only declare the

instrument to be his will, but he must so declare at the time of signing or acknowledging—which act, by the previous clause, is to be done in the presence of the witnesses. Such declaration must, therefore, be made in their presence.

I agree that no form of words will be necessary; that the legislature only meant there should be some communication to the witnesses indicating that the testator intended to give effect to the paper as his will. Any communication of this idea, or to this effect, will meet the object of the statute. It would be unwise, if not unsafe to speculate upon the precise mode of communication; as every case must depend upon its own particular circumstances. The statute itself is plain, and it is to be hoped, will be obeyed in a way to leave little or no room for construction. When we come to that, the only sure guide for the courts will be to look at the substance, sense, and object of the law, and with the aid of these lights, endeavor to ascertain if there has been a substantial compliance. I agree, also, that the mere want of recollection of the witnesses, that the testator indicated the instrument to be his will, after signing the attestation clause, ought not to be evidence *per·se* of non compliance with the statute. After this, there should be something like affirmative proof of the want of publication.

But whatever may be the mode that may hereafter be approved, by which the testator may indicate that the instrument the witnesses are requested to subscribe, as such, is intended as his will, it is entirely clear nothing to that effect appears, directly or indirectly, from the testimony in the case before us. Not one word, or sign, or even act, passed within the hearing or presence of the witnesses at the time of the execution, tending to this effect. The testimony presents the bald case of an execution according to the forms of the old law, without at the time, adverting to the new provision. The instrument in question, cannot therefore, be upheld without a virtual repeal of the sta-

tute; and though I may not admire the wisdom of the change, but have preferred the solemnities, as I think, heretofore understood in this state, and as have been settled by the recent act in England, we shall unquestionably, best consult our duty, as well as the interest of all hereafter concerned in testamentary dispositions, by giving full force and effect to the statute, fixing thereby a well known and permanent rule for their guide. I shall therefore vote to affirm the decree of the court below.

By *Senator* VERPLANCK. The able counsel for the respondents, in the course of his argument, assumed and argued from a speculative principle, from which I cannot refrain from expressing my dissent. He maintained with *Blackstone* and *Paley*, that the right of controlling the disposition of property, by will or devise, after death, is entirely the creation of municipal law, directed by considerations of policy and general expediency; and denied it to be in any sense a natural right, merely controlled and modified by positive regulations. This view of the origin of the right necessarily leads to a more strict exaction of the terms imposed by law upon the execution of testamentary dispositions, since on this theory the right itself rests wholly upon a previous literal compliance with the express requisitions of law. To me on the contrary it seems clear, in spite of high legal and ethical authority, that the right of giving to others, what has been formed or rendered valuable by our own labor, or purchased from or bestowed by those whose labor has given it value, must last to the very moment of death. Thus spake the voice of nature in the earliest patriarchal times, and so it still speaks in the rudest nations; whilst the most cultivated legal reason concurs in the same judgment, and pronounces with MANSFIELD, that " the power of willing naturally follows the right of property." *Wyndham* v. *Chetwynd*, 1 *Burr R.* 414. Why has not he who has the right to give to whom he pleases, throughout all the rest of his life, the

*1841.*

Remsen
*v.*
Brinckerhoff.

1841.

Remsen
v.
Brinckerhoff.

same right at his last hour, or in anticipation of his last hour? The legal right to bequeath personal property has been acknowledged and exercised from the most remote antiquity, and in all nations. That of devising real estate was restricted in some countries upon avowed or obvious grounds of public policy, peculiar to their own institutions. It was so by our ancient common law, for reasons of feudal policy, the very same that forbade alienation by deed, or the sale of a man's own land during his life. When therefore our statute law enacted that all persons (with certain named exceptions) might devise or bequeath real or personal property, the legislature did in that respect precisely what had been done as to the right of selling land, when it was enacted that " any person capable of holding land might also convey it." In both cases the common law restriction of natural right was repealed, whilst for the purposes of security and justice, various formalities were made necessary to the execution and proof of deeds and wills as essential to their evidence and proof of authenticity; for this natural right, like all other natural rights exercised in human society, can be regulated and modified by law for the common good. It may be limited, restrained, regulated by positive enactment. It is upon this principle of original right, prior to any statute, that courts have always rightly looked to the intent of the testator and favored its execution. But if that right existed only by means of law, intention would be nothing; the right would not exist till the requisitions of law conferring it had been literally complied with. This distinction is admirably summed up by Dr. Johnson, in a very remarkable example of his logical talent, a discussion of certain points of Scotch law, for the use of his admiring biographer. "All possessions are by natural right wholly in the power of the present owner, and may be sold, given or bequeathed, absolutely or conditionally, as judgment shall direct or passion incite. But natural right would avail little without the protection of law, and the primary notion of law is

restraint in the exercise of natural right. A man therefore in society is not fully master of what he calls his own, but he still retains all the power which law does not take from him." The question then in every case like the present, is not whether the testator has become entitled to devise, by full compliance with the letter of the law; but whether there has been such a neglect of the legal requirements enacted to guard against fraud, as to make the will inoperative, as an evidence of intention, and consequently to leave the property to be governed by the general laws of descent or distribution.

The practical results to which these opposing views of an apparently theoretical principle may often lead, will, I trust, excuse this digression upon a doctrine much insisted upon in the argument; and although it is not immediately necessary to support my own conclusions in the present case, I think it may be of much importance in the decision of some other of the numerous cases of litigated wills upon which we are soon to pass.

Upon the principles just stated, I regard the requirements of our statute as to the execution and proof of wills as being merely the prescribed rules for the evidence, pronounced by law to be indispensably necessary to prove the disposing mind and will of the testator, and the authenticity of the testament; both of these being subjects peculiarly open to imposition, artifice and error. The law, therefore, prescribes that " every last will and testament shall be executed and attested in the following manner: 1st. It shall be subscribed by the testator at the end of the will; 2nd. Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the witnesses; 3rd. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament; 4th. There shall be at least two attesting witnesses, each of whom shall sign his name as a wit-

1841.

Remsen
*v.*
Brinckerhoff.

ness at the end of a will at the request of the testator; and 5th. The witnesses shall write opposite their names their respective places of residence." 2 *R. S.* 64, § 40. This last requirement seems, however, not essential to the proof but is enforced by a penalty for neglect.

Did, then, the testatrix, in the case before us, give the required evidence by declaring the instrument signed and witnessed to be her last will and testament ? This question involves the consideration of two points: one of law, the other of evidence. What is meant by the *declaration* required ? Unless we resort to that artificial system of interpretation, by which any words may be made to mean any thing, the word *declare* will be always found to signify distinctly, " to make known, to assert to others, to show forth;" and this in any manner, either by words or by acts, in writing, or by signs. Thus, in our English Bible, we read, " Declare ye among the heathen, publish, conceal not;" an example at once and an explanation; the same idea being enforced and illustrated after the usage of the Hebrew parallelisms, in other words. So again of declaration by signs or other indications, it is said, " Ye are manifestly *declared* to be the epistle of God." It is useless to multiply examples, as all usage shows that " to declare " to a witness that the instrument subscribed was the testator's will, must mean " to make it at the time distinctly known to him by some assertion, or by clear assent in words or signs."

The history of this branch of the law, shows that the subject of positive external declaration must have been intended to be legislated upon in our revision of the statutes. The long series of decided cases upon the perpetually arising question, how far proof of the testator's knowledge that the paper signed by him was a will, was or was not sufficient without farther publication, proves incontestably that the minds of the revisers and of the revising legislature were called to the subject and all its distinctions and difficulties. Eminent judges (as Lord HARD-

WICKE in *Ross* v. *Ewen,* 3 *Atk. R.* 161) had held that pub-

1841.

Remsen
*v.*
Brinckerhoff.

lication was essential to the execution of a will; and that " the mere written declaration in the instrument that it was a will was not sufficient;" whilst in other and later deci-sions, here and in England, it had been held with Lord MANSFIELD, that " the witnesses need not know the con-tents, need not see the testator sign, that it was sufficient if he acknowledge his signature; for he may deliver it as a deed." *Wyndham* v. *Chetwynd,* 1 *Burr. R.* 421.

The signing of papers purporting to be wills by persons near death, supposing that they signed some other instru-ment, was a danger such as demanded consideration whe-ther it might not be excluded by positive legislation. I accordingly agree with the Chancellor, that considering the explicit language of the statute in reference to the doubts under the former statutes, and in connection with the fact, that the legislature deliberately changed the lan-guage of those former acts, there can be no reasonable doubt that the law-makers meant to require an absolute publication at the time of the signing or acknowledgment. This legal and historical external evidence of the legisla-tive intent corresponds with and supports the natural and obvious interpretation of the statute itself. When, there-fore, it was determined that such a declaration should be made essential to the due proof of wills, as the necessary evidence of the testator's real intent, it was expressly en-acted that this declaration should be made to each attest-ing witness at the time of execution or acknowledgment. How, then, can this positive requirement be satisfied, ex-cept by the testator personally making the fact of his own understanding and intention known to the witnesses at the time by such express words or signs as could leave no doubt in their minds? This provision is just as impe-rative as that requiring two witnesses to the will, though otherwise a single one might ordinarily be sufficient. They are both of them strict rules, prescribed by precautionary

policy for the government of those who alone can give the legal effect to the testament.

Here the evidence shows conclusively that the testatrix made no verbal declaration to the witnesses, did not cause them to read any written declaration, nor in any other way rendered it clear that she might not have thought the instrument signed and acknowledged was a deed or lease instead of a will. There was at the end of the instrument an attestation clause, setting forth in the customary form, that the testatrix " acknowledged to each witness that she subscribed the same and declared it to have been her last will and testament." This, if the witnesses had been asked to read it by the testatrix, or in her hearing, would have been a silent but clear declaration. But it was not read by them. The appellants' counsel maintained, that knowing the contents of the will and the concluding attesting clause, the testatrix, when she acknowledged her signature " for the purposes therein mentioned," made the declaration her own, as much as if she had distinctly repeated it; so that she virtually declared her signing to be for the purpose of authenticating her last will and testament. This might tend to show her intent, and if she had shown that clause to the witnesses, or had it read by another person, and assented to it, that would have been a declaration, a making known her will to the witnesses. But presuming the written attestation to have been correctly understood by the old lady, it was in fact merely a declaration, written to be made known thereafter to others, and not one made at the time to the witnesses.

With respect to the evidence necessary to prove a declaration, I do not doubt that the proved or acknowledged signatures of witnesses to a will, bearing above their names an attestation of the required declaration, must be good presumptive evidence of an actual declaration, and sufficient to prove the will if not refuted. Such, would of necessity, be the case upon the absence or death of the subscribing witnesses, and the proof of their hand writing by others, ac-

1841.

Remsen
v.
Brinckerhoff.

cording to the statute. But in every case the clear proba-
bility must always be, that the witnesses would not have
signed the attestation of due publication, had it not agreed
with the fact, so that this must be the legal presumption
until expressly contradicted. The mere absence of addi-
tional proof would not negative this presumption. Here
however, we have the testimony of the subscribing witnes-
ses themselves, direct and positive, that they did not read
this declaratory clause, and that nothing passed that could
indicate any intent to inform them that they were witnes-
sing a will, and not a deed or lease. The circumstance of
the testatrix having directed the addition of the witnesses'
residence to their names, tends to show her own knowledge
of the character of the instrument, (though not conclusively)
but proves nothing as to any design of thus indirectly in-
forming others that this was her will, since neither she nor
they might know that this was the peculiar mode required
by law for the attestation of wills.

In the absence of adverse testimony, the strong presump-
tion of the truth of the written attestation being correct,
when the signatures of the witnesses were acknowledged
or proved, would establish the will. But that presumption
is not like that in favor of a written contract binding the
parties signing it, and shutting out contradictory parol tes-
timony. It is, in itself, proof of no higher order than parol
testimony, and as such, is subject to explanation or refuta-
tion, as much as receipts, certificates of the proof of deeds,
and similar written documents, which are in themselves
*prima facie*, satisfactory proof. 1 *R. S.* 759.

This, therefore, is incontestably a case where the open
evidence of knowledge and intent, demanded by our law,
in order to exclude the possibility of delusion or decep-
tion, and to authenticate wills, has not been furnished.
The will has, therefore, not been proved according to
law, any more than if it had but a single witness; and
the estate must pass under the general laws of descent
and distribution. I place my opinion exclusively upon

**1841.**

Remsen
*v.*
Brinckerhoff.

this ground. The intimation of actual deception, made in argument and countenanced in the Chancellor's opinion, is not, to my understanding, supported by proof or probability sufficient to authorize the impeachment of the witnesses or the legatees. The naked fact of a testatrix preferring those relations or descendants with whom she resides, to others at a distance, rather tends to support the will than to invalidate it; and at any rate ought not to expose any one to the imputation of criminal artifice. The only effect of this part of the evidence on my mind, was to show the possibility of such a deception, and thus to support the policy of our legislation and strengthen the reasons for its strict judicial application.

On the question being put, *Shall this decree be reversed?* all the members of the court present at the argument of the case answered in the negative. Whereupon the decree of the Chancellor was AFFIRMED.