EMELINE LANE as Executrix, etc., Appellant, v. HENRY F. LANE, Respondent.

It is not essential to the due publication of a will that the testator shall declare in express terms in the presence of the subscribing witnesses that the instrument is his last will; it is sufficient if he in some way makes known to them by acts or conduct, if not by words, that it is intended and understood by him to be his will.

Where therefore a testator subscribed the will in the presence of the witnesses, and by his conduct made known to them its nature, and requested their attestation, *held* that there was a substantial compliance with the statutes, sufficient to entitle the will to probate,

*Mitchell* v. *Mitchell* (16 Hun, 97, affirmed 77 N. Y. 596), distinguished.

Probate was contested by the heirs-at-law. It appeared that through partial paralysis of the vocal organs, the testator at the time he executed his will was unable to utter words, but he made sounds intelligible to those familiar with him, and signs, which to some extent any one could interpret. His wife went with him to the house of the scrivener who drew the will. She was executrix and legatee. *Held*, that she was incompetent under the Code of Civil Procedure (§ 829), to testify to any thing said by her to the testator, or to what he communicated to her or others, in reply.

(Argued March 13, 1884; decided April 15, 1884.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made May 1, 1883, which denied a motion for a new trial of certain issues which had been settled herein and tried at a circuit.

These were proceedings for the probate of the will of Frederick F. Lane, deceased.

The facts, so far as material, are stated in the opinion.

*George B. Bradley* for appellant. The testator having subscribed his name to the will at the end thereof in the presence of each of the subscribing witnesses thereto, and at the time he so subscribed it having declared it to be his last will and testament, there was a compliance with the statute. (2 R. S. 63, § 40, subd. 3; *Coffin* v. *Coffin*, 23 N. Y. 15; *Torry* v. *Brown*, 15 Barb. 304; *Marvin* v. *Marvin*, 3 Abb. Ct. App. Dec. 201, 202; 4 Keyes, 21.) There was an unquestioned and effectual

publication of the will. (*Trustees of Auburn Seminary* v. *Calhoun*, 25 N. Y. 422; *Coffin* v. *Coffin*, 23 id. 9, 15; *Thompson* v. *Seastedt*, 6 T. & C. 78; 62 N. Y. 634; *Gilbert* v. *Knox*, 52 id. 125, 128; *Niffer* v. *Groesbeck*, 22 Barb. 670; *Darling* v. *Arthur*, 22 Hun, 84; *Torry* v. *Bowen*, 15 Barb. 304; *Ludlum* v. *Otis*, 15 Hun, 412; *Muirs* v. *Freeman*, 3 Redf. 181.) The court erred in striking out the testimony of Mrs. Emeline Lane, and in withdrawing it from the consideration of the jury. (*Simmons* v. *Sisson*, 26 N. Y. 264; *Cary* v. *White*, 59 id. 336; *Hildebrandt* v. *Crawford*, 65 id. 107; *Braque* v. *Lord*, 67 id. 495; *Krushaar* v. *Meyer*, 72 id. 602; Code of Civ. Pro., § 828; 59 N. Y. 339; *Quin* v. *Lloyd*, 41 id. 354.) When the court swept out all the testimony of the witness, if any of it was competent, the proponent was justified in complaining, and the exception was well taken. (*Quin* v. *Lloyd*, 41 N. Y. 354.) The fact of publication of a will is not dependent upon the testimony or recollection of the subscribing witnesses. (*Trustees of Auburn Seminary* v. *Calhoun*, 25 N. Y. 422.) The motion for new trial was properly made at General Term. (*Howland* v. *Taylor*, 53 N. Y. 627; *Sutton* v. *Ray*, 72 id. 482, 484–5; Code of Civ. Pro., § 3347, subd. 11; 2 R. S. 67, § 58; *Watts* v. *Aikin*, 4 How. 349; Laws of 1847, chap. 280, § 17; *Spotts* v. *Dumesnil*, 12 Abb. [N. S.] 128; *Marvin* v. *Marvin*, 3 Abb. Ct. of App. Dec. 193; 4 Keyes, 10; *Johnson* v. *Hicks*, 1 Lans. 150; *Webster* v. *Cole*, 17 Hun, 507, 509; Const. of 1821, art. 5, § 4; Laws of 1830, chap. 185, § 1; 2 R. S. [2d ed.] 124, § 9; id. [3d ed.] 260, § 9; 2 R. S. 67, § 58; Code of Pro., § 471.)

*J. McGuire* for respondent. There was not a due execution of the will in that there was not a valid publication thereof within the requirements of the statute. (*Baskin* v. *Baskin*, 36 N. Y. 416; *Gilbert* v. *Knox*, 52 id. 125; *Bagley* v. *Blackman*, 2 Lans. 41; *Brown* v. *De Selding*, 4 Sandf. 10; *Seymour* v. *Van Wyck*, 6 N. Y. 120; *Burritt* v. *Selliman*, 16 Barb. 198; *Mitchell* v. *Mitchell*, 16 Hun, 97.) The situation, health and surroundings of the testator, whether the person

who draws the will is presumed to know the legal formalities or requisites, the attestation clause and all the attendant circumstances are to be considered in determining whether there has been a full or substantial compliance with the statute. (*Heath* v. *Cole,* 15 Hun, 100 ; *Abbey* v. *Christie,* 49 Barb. 276 ; *McKinley* v. *Lamb,* 64 id. 199 ; *Kingsley* v. *Blanchard,* 66 id. 317 ; *Doe* v. *Doe,* 2 id. 200.) In determining the due execution of a will or of a compliance with the statutory requirements, the attestation clause may be referred to, and under certain circumstances the recitals as to a compliance may be adopted. (*Brown* v. *Clark,* 77 N. Y. 369 ; *Gilbert* v. *Knox,* 52 id. 125.) The appellant, being the widow, executrix and principal legatee, was not competent to testify as against the respondent to the acts, conduct and transactions of the testator in the making and execution of the will, in which he participated. (Code of Civ. Pro., § 829.)

DANFORTH, J. A paper purporting to be the last will and testament of Frederick F. Lane was admitted to probate by the surrogate of Schuyler county, but his decision was reversed by the Supreme Court, and certain issues relating to its execution and the testamentary capacity of the testator were sent to a jury for trial. They have been so answered as to establish that the instrument in question was first read to or by the testator ; that he understood it was his last will and testament and so subscribed the same at the end thereof in the presence of two persons, viz.: S. B. H. Nichols and L. C. Wakelee, who at his request subscribed their names thereto as attesting witnesses ; — that the testator at the time was fully competent to make a will, and not disabled either in respect of his person, mind, or condition, being under no restraint or undue influence, and of sound and disposing mind and memory ; — that the making and executing of this instrument was his free and voluntary act; that at the time he " fully comprehended the effect of his act in so executing the same, and that of the subscribing witnesses thereto." But to the question whether " at the time of subscribing the paper he declared in the presence

of the subscribing witnesses, and each of them, that the instrument so subscribed was his last will and testament," the jury answered "yes, as to Nichols; no, as to Wakelee."

The proponent upon a case and exceptions moved the Supreme Court at General Term for a new trial, and it being denied, brings this appeal. It is now stated in the printed points of the learned counsel for the respondent, that after verdict the proponent moved the judge who presided at the trial for judgment *non obstante verdicto*, or a new trial, and was denied. He claims, therefore, that the proponent should have taken an appeal from that decision to the General Term instead of going there with an original motion. No basis for this contention appears in the record before us. Therefore, it is not necessary to pass upon it. We are of opinion, moreover, that the appellant is entitled to a new trial upon the ground that the verdict of the jury in answer to the question referred to, was not warranted by the evidence. They found that the subscription by the testator was at the proper place (2 R. S. 63, § 40, sub. 1), and that he subscribed the will in the presence of each of the attesting witnesses; that each of these witnesses signed his name as a witness to the execution of the will at the request of the testator (sub. 4, id.), thus showing exact and formal compliance with all statutory requirements save one, viz.: that "the testator at the time of making such subscription * * * shall declare the instrument so subscribed to be his last will and testament" (sub. 3, id.). But upon the other conclusions of the jury, and the uncontradicted evidence in the record, we think this question also should have been fully answered in the affirmative. It is quite probable that the jury were led to their discriminating answer by a too close and exclusive adherence to the testimony of one witness, who said, "when Wakelee came in he did not ask Mr. Lane if that was his last will and testament, nor did Mr. Lane say 'that is my last will and testament,'" and to that of Wakelee himself, who said, "I did not ask Mr. Lane if that was his last will and testament, nor did Mr. Lane say to me, 'yes, this is my last will and testament.'" It was but negative

evidence, and if true, was not conclusive as to the fact in con-troversy. The jury were also to consider the conduct of the testator, his acts, and the circumstances which he created and which surrounded the transaction. Upon all these things the proponent might notwithstanding that testimony rely and succeed.

Although publication is as essential to the validity of a will as its execution or other prescribed formality, it has never been supposed that a particular, or even any form of words was necessary to effect it, and in *Remsen* v. *Brinckerhoff* (in the late Court of Errors, 26 Wend. 325), one of the first cases arising after the enactment of the statute, it was said that by the provision in question "the legislature only meant there should be some communication to the witnesses indicat-ing that the testator intended to give effect to the paper as his will, and that any communication of this idea or to this effect will meet the object of the statute, that it is enough if in some way or mode the testator indicates that the instrument the witnesses are requested to subscribe as such is intended or un-derstood by him to be his will." In the same case the word "declare" is said to signify "to make known, to assert to others, to show forth," and this in any manner, either "by words or by acts, in writing or by signs;" in fine "that to declare to a witness that the instrument described was the tes-tator's will, must mean to make it at the time distinctly known to him by some assertion, or by clear assent in words or signs." The case itself is an example and an explanation of this construction. Probate was there held impossible, because, as the court say, "not one word, or sign, or even act, passed within the hearing or presence of the witnesses at the time of the execution, tending to this effect." It was therefore a case where a testator, through imposition, might have been induced to execute a will under pretense that it was a paper of a differ-ent nature. To prevent this was the object of the statutory requirement.

The principle upon which that decision rests, and the reason-ing by which it was supported, has been invariably applied in

this court. (*Coffin* v. *Coffin*, 23 N. Y. 1; *Trustees of Auburn Seminary* v. *Calhoun*, 25 id. 422; *Gilbert* v. *Knox*, 52 id. 125; *Thompson* v. *Seastedt*, 6 Thomp. & Cook, 78; affirmed, *sub nom. Thompson* v. *Stevens*, 62 N. Y. 634; *Rugg* v. *Rugg*, 83 id. 592; *Dack* v. *Dack*, 84 id. 663; *In re Pepoon*, 91 id. 255.) It is, therefore, to be deemed settled that a substantial compliance with the statute is sufficient. *Mitchell* v. *Mitchell* (16 Hun, 97; affirmed, 77 N. Y. 596, cited by the respondent), recognizes the same principle. But in that case there was no evidence that the testator signed the will in the presence of either of the attesting witnesses, and only one saw the signature. The court thought it could not be inferred from the testimony that the testator acknowledged the signature to the other as one in fact made by him; but even as to this the court was not unanimous in opinion. That case, also arose under a different subdivision of the statute (*supra*, sub. 2).

As to the condition now under consideration, it is well settled that the necessary publication may be discovered by circumstances as well as words (*Lewis* v. *Lewis*, 11 N. Y. 220), and inferred from the conduct and acts of the testator and that of the attesting witnesses in his presence (*Thompson* v. *Seastedt*, and other cases, *supra*), as well as established by their direct and positive evidence. Even a person both deaf and dumb may by writing or signs make his will and declare it. The testator in this case was in full possession of all his senses. He could both see and hear, and was not dumb. Partial paralysis of the vocal organs prevented him from uttering words, but he made sounds intelligible to those familiar with him, and signs which, to some extent, all could interpret. There was no difficulty with his understanding. The uncontradicted evidence shows that he set about making his will in a serious and determined manner. He went with his wife and son from his own to the house of the scrivener Nichols, and there, Nichols says, " his wife, speaking in his presence, informed me that Mr. Lane wanted me to write his will, and I did so in his presence." As the scrivener wrote each section he read it aloud to the testator, who nodded approval each time. While

writing, something was said about a witness for the will, and, says Nichols, " I suggested Wakelee, and Lane assenting, he was sent for and came." * * * " I introduced Wakelee to Lane, and informed him that I was writing Mr. Lane's will, and we had sent for him as a witness." This was before the will was completed, and after it had occurred Nichols finished writing, and then the testator took it and read it himself. As this happened while the will was in preparation, it is obvious that Wakelee was present when it was finished, and when the last of it was read to the testator, and also while he himself read it. The testator and both witnesses all sat at one table when the will was subscribed and witnessed. This was done by the testator immediately after reading it, and in the presence of each and both witnesses ; they saw him read the will and subscribe it. He "shoved" the will to Nichols, who signed it, and then got up and Wakelee sat down " in Nichols' chair " and signed it. The testator left the will with Nichols several months, and then, by his directions, he gave it to Mrs. Lane.

From the situation of the parties, and the circumstances surrounding them, it seems to us that the jury were fully justified in saying that the testator made the required declaration to Nichols, and we think their verdict should have been the same as to Wakelee. They were present and together during both events of executing and attesting the will, and the conduct of the testator upon that occasion amounted to a declaration that the instrument was his will and testament. Such also is the meaning of the attestation clause, and this, upon such a question, may be referred to *Brown* v. *Clark* (77 · N. Y. 369); *Chaffee* v. *Baptist Missionary Convention* (10 Paige, 85). It is not in the usual form, but recites that " as witnesses to this last will and testament of Frederick F. Lane, we have signed our names * * * by his request, in his presence, and in the presence of each other." The request covers the act of the parties, and embodies a description of the instrument when declaring the character in which the witnesses attest it. It is as if the testator had said, I request you to sign as witnesses to my will. Two facts are involved, a statement of the paper and a

desire on his part. Such declaration may also be inferred from his conduct. He knew the paper was his will; he had directed its preparation; it was written in his presence, read to him and read by him. He had desired Wakelee's presence to witness the will, and sitting by him, and by the other witness after signing it, passes it to one for signature, and sees first that one to whom he had declared the paper to be his will, and then the other sign as attesting witnesses. For what purpose and with what intelligence this was done the jury have found; they say that at the time of the execution of the paper writing purporting to be the last will and testament of Frederick F. Lane, he fully comprehended the effect of his said act in so subscribing the same, and that (*i. e.*, the effect of the act) of the subscribing witnesses thereto. They have said, moreover, that " he then understood that this paper was his last will and testament," and that the witnesses subscribed "said paper purporting to be said will, as attesting witnesses, at the request of the testator."

We find no room for doubt or mistake. The testator knew, and the witnesses understood from his acts and conduct, as he intended they should, that the instrument then executed was his will. The statute upon this point exacts nothing more, and it is not denied by the respondent that on every other there was strict compliance with its terms. We find then that the testator subscribed the will in the presence of the witnesses, made known to them its nature, and requested their attestation. On his part nothing more was required, and on their part was. attestation of the will at his request. Thus every safeguard prescribed by statute against improvidence and fraud was substantially observed.

The appellant presents another ground of appeal. Upon the trial the testimony of Mrs. Lane was offered by the proponent, and excluded. She was the executrix of the will and a legatee under it. The other parties to the controversy are the heirs at law of the testator. As to any personal transaction or communication with the testator, she was of course incompetent to testify, under section 829 of the Code. She, however, gave

some other evidence which, it is claimed, was not precisely of that character. At the time of the drawing and execution of the will, she was present. She was familiar with the sounds made by the testator, and the signs or motions by which he communicated ideas or wishes. She conversed with him on that occasion. Her testimony, so far as it embodied words said to him by herself, or her report of what he said to herself or others, is incompetent. It is said by Shephard in his Touchstone (Chap. 23, p. 407) "If he that doth write the will cannot hear the party speak, and another that stands by the sick man doth tell him what he doth say, in this case, if there be none others present to prove that he reported the very words of the sick man, this will be no good testament." This rule has no literal application to Mrs. Lane's evidence, but the principle of it, as well as the reason of the prohibition of the Code, applies. It was not sought to prove by her the direction of the testator as to his property and what he would have done with it, but her entire testimony was important only, because it narrated a transaction in which as one present and conversing she took a part, and its value depended upon what she gathered from the testator upon that occasion. It was else of no moment. What she learned from him no one else could either verify or deny, and her evidence is subject to the objection on which the observation above quoted depends, and to the spirit at least, if not the letter of the Code. Something may have occurred by word or act in the presence of the testator, and between him and others, to which she was not a party, and of which she could testify (*Cary* v. *White*, 59 N. Y. 336; *Kraushaar* v. *Meyer*, 72 id. 602), but her testimony was not so limited, and whether any portion of that given should have been received, and whose duty it was to indicate that portion, need not be decided, for upon the first ground stated, we think the proponent is entitled to a new trial, and the point last suggested may not again arise.

The order appealed from should, therefore, be reversed and a new trial granted, costs to abide the event.

All concur, except RAPALLO, J., not voting.

Ordered accordingly.