---

### In re BALMFORTH'S WILL.

(Supreme Court, Appellate Division, Third Department. June 24, 1909.)

WILLS (§ 119*)—PUBLICATION—SUFFICIENCY.

    Under 2 Rev. St. (2d Ed.) pt. 2, c. 6, tit. 1, § 40, providing that the testator, at the time of subscribing his will, shall declare the instrument so subscribed to be his last will and testament, where it appeared that one of the witnesses was the person who had copied the will at testatrix's request, that another witness was told by testatrix that she was getting her will made and wanted him to witness it, and that when the third witness entered the room, where testatrix and the other two witnesses were, testatrix said in presence of all three witnesses, "John, will you be a witness to my will?" there was a sufficient publication under the statute; it clearly appearing that testatrix knew, and the witnesses understood, that the instrument signed was her will.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 306; Dec. Dig. § 119.*]

Appeal from Surrogate's Court, Saratoga County.

Proceedings for the settlement of the estate of Elizabeth W. Balmforth. From a surrogate's decree excluding the will from probate (60 Misc. Rep. 492, 113 N. Y. Supp. 934), there was an appeal. Reversed, and matter remitted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

George R. Salisbury, for appellant.
William D. McNulty, for respondent.

SEWELL, J. Elizabeth W. Balmforth died July 30, 1907, leaving a paper, dated November 22, 1902, purporting to be her last will and testament. The name of the deceased was signed to the paper in her proper handwriting. Beneath her signature was an attestation clause, signed by three witnesses, which recited the execution of the will with all the formalities required by the statute of wills (2 Rev. St. [2d Ed.] p. 63. pt. 2, c. 6, tit. 1, § 40). The learned surrogate, at the close of the examination of the attesting witnesses, held that there was no valid publication, and that is the sole question presented upon this appeal for our determination.

It seems to me that the evidence shows a substantial compliance with the statute of wills. This statute, after requiring the subscription of

the testator to the will to be made by him in the presence of each of the attesting witnesses, provides that the testator, at the time of making such subscription, shall declare the instrument so subscribed to be his last will and testament. It has been repeatedly held that no particular form of words is necessary under this provision to effect publication.

In Remsen v. Brickerhoff, 26 Wend. 325, 37 Am. Dec. 251, one of the first cases arising after this enactment of the statute, it was said of the declaration required by the provision in question:

"The Legislature only meant there should be some communication to the witnesses indicating that the testator intended to give effect to the paper as his will. Any communication of this idea, or to this effect, will meet the object of the statute."

In Coffin v. Coffin, 23 N. Y. 9, 80 Am. Dec. 235, one of the witnesses asked the testator if he wished him to sign or witness the paper as a will, to which the testator answered in the affirmative, and the court said:

"As both the witnesses were present, this was a good publication as to both of them, if good as to either. We think it was sufficient, because it was in substance a communication that the paper was the will of the testator. There can be no doubt that such a declaration can be made in answer to a question, or even by a sign. It is only required that it be understandingly made, and this we have no reason to question in the present case."

In Lane v. Lane, 95 N. Y. 494, it was held that it was not essential to the due publication of a will that the testator shall declare in express terms, in the presence of the subscribing witnesses, that the instrument is his last will. It is sufficient if he in some way makes known to them by acts or conduct, if not by words, that it is intended and understood by him as his will.

. In Matter of Turell's Will, 166 N. Y. 337, 59 N. E. 911, Judge Gray, who wrote the opinion of the court, said:

"The legislative intent was that a declaration should be made by the testator, either in words or by signs, to the witnesses of his understanding of the nature of the instrument. * * * It must appear that, as between the testator and the witnesses, there was some meeting of the minds upon the understanding that the instrument was the testator's will, that it had been subscribed by him, and that the attestation of the latter was desired to the will so subscribed."

It was conclusively established in this case that the testator and the witnesses met for a testamentary purpose, and that each of them understood the character of the instrument, at the time it was executed. George C. Burbank, one of the subscribing witnesses, testified that the testatrix said "she wished me to copy her will and witness it"; that the deceased told him she had asked Hawkins and Kane to witness the will; that he did not recall how long it took him to copy the will, but he kept steadily at it; that she read the will, and spent some time perusing it to see if it was correct; that she took the seat where he had been, signed her initials at the end of each page, then she signed her name at the foot of the will; that this was done in the presence of the witnesses; and that each witness then signed in the presence of each other. He also stated that he did not recollect what she said when Kane and Hawkins came in about that being her will; that she

signed, and they watched her do it, and she indicated that they were also to sign; that there was no conversation in the room about anything except the will, and that the business of every one there was the will; that after the will was signed by the deceased and the witnesses she took it away. He testified that she either asked the witnesses verbally or by motion of the hand to witness her signature; that he did not recollect whether or not she said anything to the witnesses while they were in there, other than indicating to the paper by motion of the hand.

Edwin Hawkins, another subscribing witness, testified that he was a bellman in the Hoffman House; that while the deceased was eating breakfast she said, when he got time, she wanted him to come to the stenographer's office; that she was getting her will made, and "wanted me to sign it as a witness"; that about 11 o'clock he followed her in the stenographer's office; that the deceased was then sitting at the stenographer's desk, waiting for the will to be finished, and Burbank was working on the will, typewriting. He also testified:

"I am not very clear what I saw Burbank do, nor just what the impressions made upon me were. I had no reason to remember. I know we were called in to sign the will, and signed it; that nothing was said, except the leaves were moved over to be signed, and they each signed it. Am positive the deceased signed it while we were there, * * * and when I signed it she said, 'Thank you.'"

John Kane, the other witness, testified that, when he went in the stenographer's room, Burbank, Hawkins, and the deceased were there, and the deceased said, "John, will you be a witness to my will"; that he took the pen from Burbank and signed his name where he was directed; and that nothing was said except for him to sign the will.

These extracts from the testimony state in substance all the evidence as to the publication of the will. There can be no doubt, from this evidence, that the testatrix knew, and that the witnesses understood, not only from her words, but from her acts and conduct, that the instrument was her will. There was no evidence in opposition to the positive testimony of Kane that she did make the required declaration to him in the presence of the other witnesses, and his testimony is corroborated by the attestation clause and all the circumstances surrounding and attending the execution of the instrument. I think that the publication of the will was established by competent evidence, and that each and every condition required to make a good execution of a will was substantially complied with.

The conclusion follows that the decree appealed from should be reversed, and the matter remitted to the Surrogate's Court, with costs to the appellant to be paid out of the estate. All concur.