In the Matter of the Probate of the Will of LILLIAN MULLENHOFF, Deceased.

Surrogate's Court, Queens County, December 27, 1950.

*James Avitabile* for Katherine M. Cox, proponent.

*McCluskey & McCluskey* for St. Mary Magdalene R. C. Church, contestant.

*John J. Leahy,* special guardian for Dorothy Connor, an infant, and another.

*Hurley, Gray & Kearney* for Nursing Sisters.

SAVARESE, S.  On March 7, 1950, Lillian Mullenhoff, then about seventy-five years old and seriously ill in a local hospital, was visited by two nieces and a friend who had known her for twenty-five years.  The latter and one of the visiting nieces, who were

members of the same religious order and registered nurses of thirty years' experience witnessed the instrument offered for probate and testified before the Surrogate as to the circumstances attendant upon its making and execution. According to their testimony testatrix, after relating how sick she had gotten told Mrs. Avitabile, her niece, that she wanted her to take care of everything for her. Mrs. Avitabile took out of her purse a paper written in pencil, described by one witness as a draft, and, after reading it to the testatrix, asked her if that was what she wanted and she said " Yes." The other witness testified that her sister, Mrs. Avitabile, produced a paper written in pencil which she read to the testatrix who expressed approval of its contents. The so-called draft was not produced in court and Mrs. Avitabile did not testify. Both witnesses testified that Mrs. Avitabile penned in their presence another paper which she read twice to the testatrix who said in substance that is what I want, give it to me, where will I sign. Thereupon she signed and laid the paper down and the witnesses then placed their signatures thereon. The instrument as prepared and signed in the hospital consisted of a single sheet of correspondence paper and on which there was written in ink the following:

" I, Lillian Mullenhoff, of Queens N. Y. Being of Sound Mind make This my last Will and Testament After my Just Debts are paid.

" I hereby leave all my Properties and Personal Properties I die prossed of.

" To my Grand-Neice Kathryn Mary Avitabile Cox for Ever and as ' Executive ' No Bond or untaken what so ever.

" Dated March 7th 1950 Witness LILLIAN MULLENHOFF " The subscription of the witness was made immediately below the word " Witness ".

Testatrix died on the day following execution of the script and left a small estate consisting of real property, valued at not more than $4,500, and personal property worth about $750. Her nearest kin, twenty-nine in number are nephews, nieces, grandnephews and grandnieces. None of them has objected to probate. Objections have been made by an executor and two legatees, mentioned in a prior will dated December 28, 1949, to the issuance of letters testamentary upon grounds usually interposed to probate, namely, invalid execution, lack of testamentary capacity and the exercise of undue influence. Although framed as objections to the grant of letters testamentary, the Surrogate will consider them as interposed to probate.

Upon the trial contestants offered no evidence of any lack of testamentary capacity on the part of the testatrix or in support of their affirmative allegation of the exercise of undue influence. They appear to oppose probate solely on the ground that the propounded instrument was not validly executed. They urge that it was not duly published and that the witnesses were not requested to act as such. There is no evidence that testatrix expressly declared the script to be her will or specifically requested the witnesses to sign. Although publication is essential to the validity of a will, it need not be in any particular form. It may be discovered by circumstances as well as words, and inferred from the conduct and acts of the testator and that of the attesting witnesses in his presence. (*Lane* v. *Lane,* 95 N. Y. 494.) It is a sufficient publication if in some way or mode the testator indicates to the witnesses that the instrument is intended or understood by him to be his will. Here it is evident that the testatrix intended to make a will. The script was prepared and read twice by the scrivener to the testatrix in the presence and hearing of all participants in the transaction. It states that she is the maker, that it is her last will and testament and disposes of her property to a named individual who is designated to administer her estate. Testatrix indicated her approval of its contents and asked those present where she should sign. All that was said and done occurred in the presence of the witnesses who were in close proximity to the testatrix and each other. Although she did not in words declare the instrument to be her will, there is no doubt in my mind that she was fully informed of the contents of the paper and that she and the witnesses knew it was a will and not a paper of some other character. In my judgment there was publication of the nature of the instrument sufficient to satisfy the statute. The statute also requires two witnesses, each of whom must sign his name at the end of the will, at the request of the testator. The manner and form in which the request must be made, and the evidence by which it must be proved, are not prescribed. A compliance with the statute is established by proof that in some manner the testatrix and the witnesses came to a mutual understanding that she desired the witnesses to affix their signatures in attestation of the execution of the instrument. It is not necessary that any words shall have been spoken; signs, gestures, or pantomime, accompanied by a presentation of the instrument to the witness, are equally effectual. The request to sign as a witness need not be actual, but may be implied from circumstances (Davids on New York Law of Wills, § 330). Here the

testatrix did not send for the witnesses or arrange for their presence. Both testified that they had no prior knowledge that a will was to be signed. There was no discussion between testatrix and the witnesses prior to or at the time they placed their signatures on the instrument. After testatrix signed and laid it down neither she nor any one else said anything. Evidently it got into the hands of the witnesses but how does not appear from the evidence. There is nothing to show that testatrix gave it to either of them. Their signing seems to have been spontaneous but, as far as the evidence discloses, it was not prompted by any word, suggestion, conduct or act of the testatrix or by another, on her behalf, and to which it can be said that she assented to or acquiesced in. There is evidence that, after the signing of the instrument had been completed, Mrs. Avitabile without any request by the testatrix took possession of and retained the same. The situation here does not involve a failure of the witnesses to recall the testatrix requested them to sign. Both testified that she did not request them to sign. They impressed me as honest and intelligent witnesses. If a request had been made they would have recalled it and so testified. The fact that there was no request to sign seems to be confirmed by what happened on the day following the execution of the purported will. On that day Mrs. Avitabile's husband met the witnesses at their residences. There, out of the presence of the testatrix, the two witnesses were requested by him to and did sign on a separate sheet a so-called attestation clause penned as follows: " The foregoing instrument was on March 7, 1950 published and declared by Lillian Mullenhoff, as her last Will, in our presence and in her presence we signed our names as witnesses thereto."

This writing is nothing more than a belated memorandum of the witnesses' recollection of a past event. While its recital of what occurred is in accord with the testimony given by the witnesses it is significant for its omission to state that the witnesses signed the instrument at the request of the testatrix. After a careful consideration of all the evidence I am unable to find that there was either an actual or implied request made to the witnesses to sign as such, and, therefore, determine that the propounded instrument was not validly executed and deny probate of same.