### *In re* Look's Will.

#### (*Surrogate's Court, Chautauqua County.*   March, 1889.)

1. WILLS—VALIDITY—ATTESTATION.
   Upon application for the probate of a will there was no attestation clause, but both subscribing witnesses testified to the circumstances attending the execution of the will.   One witness, who, though present, did not see testatrix sign, wrote her name about three-fourths of an inch below that of testatrix, both signatures being plain and legible.   This witness testified that she signed at the request of testatrix, but, owing to defective glasses, she could not have told whether the will and signature were in the handwriting of testatrix or not, nor could she have seen the signature with the glasses she was using.   She stated that the instrument presented the same appearance when she was testifying as when she witnessed it, nearly a year before.   *Held,* in spite of her statement that she did not and could not have seen the signature of testatrix, that the whole evidence established the fact that she did see it, and had forgotten the fact, and hence the will was duly attested by her.

2. SAME.
   A statement by the testatrix, in answer to a question whether her will was properly drawn, that the will would be the same as it was then if she should live a number of years, is equivalent to a declaration that the instrument was her will.

3. SAME—BEQUEST TO CHARITY.
   A bequest to the "American Bible Society, formed in New York in the year 1816, to be used  *  *  *  for the promulgation of the Holy Bible," is valid, the society mentioned having been incorporated originally about the year 1816, for the precise purpose specified by the bequest.

Application for probate of a will.

*Sherman S. Rogers* and *John G. Milburn,* for the American Bible Society. *A. A. Van Dusen,* for petitioner.   *H. Applington,* for contestants.

SHERMAN, S.   The alleged will of the deceased is contested upon the grounds —*First,* that it was not subscribed, published, and attested as and for her last will, in conformity to the statute of wills in such case provided; *second,* in that the witness thereto, Malinda Clark, did not see the testatrix sign it; *third,* that she did not see the signature of the testatrix when she signed it as a witness; *fourth,* that the testatrix did not acknowledge to the witness that such signature was hers.   The will bears date April 25, 1888, and relates to real property valued at $400 and personal valued at $5,000.   The testatrix died on the Assembly grounds, at Chautauqua, N. Y., July 2, 1888, leaving as her surviving heirs at law 25 cousins residing in western states and territories, 1 in Maine, and others whose names and places of residence are unknown, and appointed Edwin Kirkland executor.   By the first paragraph of her will she gave to Mrs. John A. Miles $300, to be used to keep in good condition the burial lot and grave-stones where her parents and grandparents were buried.   By the second paragraph of the same instrument she gave to Miss Mary Bushee $200.   The third and last paragraph of her will reads as follows:   "*Third.* After the payment of all my just debts and funeral expenses are made, and grave-stone erected and paid for, I give and bequeath all the residue of my property to the American Bible Society, formed in New

York in the year 1816, to be used by said society for the promulgation of the Holy Bible." The surrogate is asked by the contestants, cousins of the deceased, to give construction to the third paragraph of the will, and to adjudge the same void, on the alleged grounds that the same is indefinite, that no beneficiary capable of coming into court and claiming the bequest is named, or that can compel the American Bible Society, the trustee, to execute the trust.

The first question for consideration relates to the objections that the alleged will was not properly subscribed, attested, and published, as required by the statute of wills, which declares that every last will and testament shall be subscribed by the testator, that the subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of them, and that the testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament, and that there shall be at least two attesting witnesses who shall sign their names at the end of the will, at the request of the testator. Was all this done in this case? If not, the instrument should not be probated. The will is holographic, written by the testatrix in her own handwriting on one side of a half-sheet of foolscap paper, in a very plain, legible handwriting, in as good form and substance as the average attorney would do it. The testatrix signed her name under the witnessing part of the will, at the left-hand margin thereof affixing a seal. There is no attestation clause. Directly under the name of the testatrix appears that of William Chace, her attending physician, as a subscribing witness. No question is made but that he subscribed the will in her presence as a witness, and at her request, nor that the formalities required by the statute on her part and his were complied with. Directly under his name, and three-fourths of an inch below her name, appears the name of the other subscribing witness, Malinda Clark, written by her in a plain, legible handwriting, in smaller letters than ladies usually write, the word "Malinda" being written on the line of the paper as ruled, and a part of the word "Clark" being a trifle below the line. It is claimed by the learned counsel for the contestants that the last-named witness did not see the testatrix subscribe the alleged will, and that it was not signed in the presence of such witness; that the testatrix did not acknowledge to the witness that the signature to the will was her (Roselia S. Look's) signature. The evidence ·bearing upon these questions raised by the contestants' counsel is substantially as follows: The witness Dr. Chace testified that he saw the testatrix at her house at Chautauqua when visiting her professionally in April last; that she told him she had made her will and was going to sign it, and wished him to witness it, and that she was going to have Mrs. Clark witness it also; that she then went out of the room and came back, and that Mrs. Clark about that time came in; that Miss Look then went into the bedroom adjoining the sitting-room where she had been, and that he saw her in the bedroom, arranging her paper he saw her have, and that she signed her name to it, and that he immediately signed his name under hers, as a witness; that he had noticed Mrs. Clark come into the bedroom; that Miss Look had arranged the paper, and that he showed Mrs. Clark where to sign her name, and lent her his spectacles, as she could not see very well, and that she (Mrs. Clark) signed her name; that after Mrs. Clark signed her name they stepped into the sitting-room, and that the witness Dr. Chace then, in the presence of Mrs. Clark, asked the testatrix (Miss Look) if she declared this paper to be her last will and testament, and she said she did; that this was in the sitting-room, near the bedroom door, being in full view into the bedroom,—a small room about eight feet square with a bed, stand, one chair, and a cupboard or clothes-press in it, and opening into the sitting-room, which was about twelve by fifteen feet, and had a stove in it; that he was standing not two feet from the testatrix when she, sitting at the stand in

the bedroom, at the head of the bed, opposite the door, signed her name to the will, which lay partly open, one fold at the top folded; that the stove in the sitting-room was nearly in front of the door leading into the bedroom; that Mrs. Clark came into the sitting-room before Miss Look signed the will, and was standing up near the stove, not more than four steps from being in full view into the bedroom, but not where she could see Miss Look when she signed the paper; that the witness Chace then, immediately after signing as a witness, called Mrs. Clark to come into the bed-room, who signed her name as a witness to the will in the presence of both the witness Dr. Chace and the testatrix, who were standing near Mrs. Clark, in the little bedroom; that after Miss Look signed the paper she did not ask the witness Chace to sign it. Dr. Chace asked Miss Look if she wrote her will herself, and suggested that it might not be right, at which the testatrix nodded her head and smiled, saying that her mother had made her will in that way, and that she knew that it would be all right. Dr. Chace testified that the testatrix was of sound and disposing mind. The witness Malinda Clark testified as follows: "I reside at Chautauqua; have about twelve years. I knew the deceased in her life-time; had about six or seven years. She was a neighbor of mine. I was at her house last April. [The will presented to the witness.] I signed my name to this paper in her bedroom. She requested me to do it. I was in the kitchen at the time of her request. When I first went there I was in the kitchen. She called me at the door to come into the sitting-room. I went in, and she then requested me to sign her will. This was in the sitting-room. I saw Dr. Chace there at that time. She said the doctor would show me where to sign my name. He did so, and I signed my name. The paper lay on the stand in the bedroom when I signed it. It was folded a little,—one fold at the top was folded. The doctor was there in the bedroom, present when I signed it. I don't remember whether Miss Look was there or not. I was acquainted with Miss Look's handwriting. I did not at the time observe whether the paper was in her handwriting, with the glasses I had. She used to send notes to me when she wanted me to come down to her house. [The alleged will presented to witness.] I should say this paper was in her handwriting,—the signature and all. I could not have told without glasses in whose handwriting the paper and signature was. I could not see very well with the doctor's glasses on. I did not see the signature to the paper when I signed it; did not see it with those glasses. I do not remember that Miss Look made any remark when I was there in the bedroom. I did not at any time before I signed it remember of hearing her say that she had signed it. I went right into the sitting-room when requested, and she then, in the sitting room, requested me to sign her will as a witness. I went into the bedroom; was seated when I signed at the little stand in the bedroom. I next saw Miss Look, after I signed the will, sitting in a chair between the stove and bedroom door, in the sitting-room, in full view of the stand, and about eight and one-half feet from the stand. I don't remember of the doctor asking her any questions in the presence of us both." *Question.* "Do you remember that the doctor asked the deceased if she acknowledged that to be her last will and testament after you had both signed?" Objected to as leading; overruled, and exception. *Answer.* "I don't remember. I heard her say at this time in the sitting-room, in the presesence of Dr. Chace, that if she should live a number of years that this will would be just the same as it was then. She did not appear to be under any restraint. I think she was of sound mind and memory. [The will again presented to witness.] This is my signature to this instrument. The paper appears now as it did when I signed it."

I think, from all this evidence, that although Mrs. Clark swears, nearly a year after witnessing the will, that she did not see the signature of Roselia S. Look (written in a very plain, legible hand, in less than one inch above that of the witness) at the time she witnessed the will, she must have been mis-

taken by failure of memory. This conclusion is reached from a careful examination of the paper itself and her equally positive testimony that the instrument appeared at the time of trial the same as it did when she signed it, showing that she must have seen the instrument, and especially the signature so near her own. And I find as a fact that she did see the will and the signature of the testatrix thereto at the time she signed it as a witness.

The evidence shows quite conclusively that the testatrix acknowledged and declared, after all had signed it, in the presence of both witnesses, that that was her last will and testament. Dr. Chace swears positively to this, and Mrs. Clark does not contradict it, but says she does not remember, but does recollect that Miss Look, immediately after the will was signed, and in the presence of herself and Dr. Chace, did say that "if she should live a number of years, that this will would be just the same as it was then,"—a declaration equivalent to saying: "This is my will, and it will stand such, if I should live a number of years." It is evident that the testatrix did all that could reasonably be deemed necessary to make a formal execution of her will, and had no reason to believe that Mrs. Clark did not see her signature, which was plainly visible to the witness when she signed it. I am of the opinion that all the substantial requirements of the statute have been complied with for the probate of this will. I do not think that *In re Mackay,* 110 N. Y. 611, 18 N. E. Rep. 433, cited by the contestants' counsel, is in point. The facts and surrounding circumstances are very different in this case from that. In that case the testator so folded the will that neither witness could see it or the signature thereto, or any part of it, except the attestation clause. In *Mitchell* v. *Mitchell,* 16 Hun, 97, affirmed by the court of appeals in 77 N. Y. 596, only one of the witnesses saw the signature of the testator, and no effort was made by him or any one to call the attention of the witness to it, who signed under an attestation clause. In that case the court was divided, four for reversal and three for affirming decree of surrogate, admitting the will to probate. But these cases are not very material, in view of the finding of fact that Mrs. Clark did see the signature of the testatrix at the time she signed the will as a witness. Code, § 2620; *Estate of Trenor,* 4 N. Y. Supp. 466; *McMillen* v. *McMillen,* 13 Wkly. Dig. 350; *In re Austin,* 45 Hun, 1; *Baskin* v. *Baskin,* 36 N. Y. 416; *In re Beckett,* 35 Hun, 447, affirmed 103 N. Y. 167, 8 N. E. Rep. 506.

The surrogate is asked by the contestants to give judicial construction to the third clause of the will, and to declare the same void upon the grounds stated above. It was admitted upon the trial that the American Bible Society named in the will was incorporated by chapter 68, Laws 1841, amended by chapter 360, Laws 1872, and by Sess. Laws 1852, and chapter 105, Laws 1888, and was first duly organized in or about 1816. It appears that the bequest to this corporation was made for the very purpose for which it was incorporated, and was not a gift in trust. The application to adjudge the bequest void is denied. *Wetmore* v. *Parker,* 52 N. Y. 450. Decree made, admitting the will to probate.