MACOMBER and BARTLETT, JJ., concur.

---

In the Matter of the Probate of the Paper-writing propounded as the Last Will and Testament of CECILIA L. BOOTH, Deceased.

*Supreme Court, First Department, General Term, May 24, 1889.*

1. *Will. Execution.*—Writing the name only at the commencement of a will, instead of signing it at its conclusion is, at the most, uncertain and equivocal. In order to render it a sufficient signing, under the statutes of New Jersey, the decedent must make some reference to the name, as intended as her signature. There must be some proof on the part of the proponent that the name written in the instrument in this manner, was so written for, and intended as, the signature of the decedent.

2. *Will. New Trial.*—The court, where issues of fact on a probate proceeding have been framed and tried at the circuit, may entertain a motion for a new trial upon its minutes, or at a special term.

3. *.Same. Motion for judgment.*—A motion at general term upon the verdict in such case, is premature during the pendency of an appeal from an order denying such new trial.

4. *Same. General issues.*—Where, on the probate of a will, several issues are framed and submitted to the jury, and their finding on one issue shows that they are prepared to find a verdict unsupported by evidence, a new trial should also be granted as to all the other issues submitted at the same time, though, as to those issues, the verdict is not contrary to the evidence.

Appeal from an order denying a motion for a new trial of issues, directed to be tried before a jury at the circuit.

*B. F. Watson,* for appellant.

*J. Stewart Ross*, for respondent.

DANIELS, J.—This case is now before this court for the third time. See 9 N. Y. State R. 899 ; 13 Id. 344. On the first occasion it was brought up by an appeal from the decree of the surrogate, admitting an instrument to probate as the will of Cecilia L. Booth, dated on the 16th of June, 1884. The instrument was not subscribed by the decedent, and for that, as well as other reasons, its probate was resisted by her surviving husband. It was made at Long Branch, in the state of New Jersey, where the statute did not, as it does in this state, require a testamentary disposition of property to be subscribed, to render its execution legal and complete. What has been there required is, that the instrument shall be signed by the decedent in the presence of two witnesses, or the signature shall be acknowledged in the presence of the same number of witnesses, at the same time subscribing their names as witnesses to the document. The decree of the surrogate was reversed, and for the disposition of the questions in controversy, upon which the validity of the instrument, as a will, depended, issues were settled, as that has been directed to be done by section 2588 of the Code of Civil Procedure, to be tried before, and answered by, a jury at the circuit. These issues, for the most part, were quite formal, and were established by the evidence in favor of the proponent.

The earnest part of the controversy was directed to the disposition of the fourth and fifth of the issues directed to be submitted. By the fourth, the jury were directed to determine and answer whether the instrument was written by the decedent in the presence of two witnesses, who were present at the time and subscribed their names to the paper, as witnesses, in the presence of the decedent. This issue they answered in the affirmative. And the evidence which was given upon the trial by the two subscribing witnesses to the instrument, though differing from that given before

the surrogate, was sufficient to sustain the conclusion of the jury contained in this answer.

By the fifth issue, the jury were in like manner directed to decide whether the name Cecilia L. Booth, contained in the first line of the instrument, was acknowledged to have been written, or made by her, in the presence of two witnesses present at the same time, and subscribing their names to the instrument in her presence. And to this, they answered that it was. This answer has been objected to as unsupported, as it was on the preceding appeal, by the evidence given upon the trial. The testimony of the witness Amelia Kurrus, who was one of the subscribing witnesses, was that the decedent informed her that she was about to make her will, giving her property to the proponent, who was her sister, and requested her to become a witness to the instrument. Her testimony is that she wrote one instrument, and discovering a mistake in it, tore it up, and then, in the presence of this witness, wrote the other, and read it over to the witness, and after reading it, requested her to sign her name, which she did. She did not observe the other witness to be present at the time, neither did she hear the decedent make any furthur reference to the instrument as a will. But after she had signed she stated that she saw Mamie Clifford, the other witness, sign her name. This other witness, in the course of her testimony, stated that she was present during the writing of the instrument, and that when it was completed the decedent said, " This is my will, take it and sign it." But neither of these witnesses stated that the decedent at any time referred to her name written in the first line of the instrument as her signature to it as a will. And it was chiefly because of the absence of testimony of this nature that it was before held that the jury could not, under the evidence, answer the fifth inquiry as they did and find that the decedent did acknowledge the writing, or making of, the name in the first line in the presence of the two witnesses.

This decision of the court has been very earnestly objected to on the part of the proponent as having been erroneously made. And the cases of the Will of Higgins (94 N. Y. 554), and of the will of Phillips (98 N. Y. 267), are cited as maintaining this objection. And the still later decision in Matter of Hunt (18 N. Y. State Reporter, 118), is to the same effect. But they fail to do that. For in each of these cases the instrument was subscribed by the decedent, which of itself was an act directly indicating that the name was placed in the position occupied by it, as a signature to the instrument as a will. And this name in each instance was exhibited to the witnesses with the instrument itself when it was declared to be the will of the testator. The facts which transpired, therefore, were equivalent in those cases to the statement that the signature had been placed to the instruments to complete and authenticate them as wills. But writing the name of the decedent, as it was written in this instance, in the first line of the instrument, was at most no more than an equivocal act. It may, or may not, have been designed by the writer as her signature to the instrument. Ordinarily and commonly it would not be so regarded, for the common understanding of signing an instrument, is to place the signature at its end or termination. And that the decedent thought that to be requisite is evident from a similar instrument made by her on the 11th of June, 1884. This instrument was substantially the same as the one now in controversy. It was written by herself, and her name was made a part of the first line. But, in addition to that circumstance, when the instrument was completed she signed her name, adding her place of residence at the end, or foot, of the instrument.

From this it appears to have been her understanding, that to make a complete instrument for the disposition of her property, the signing that was necessary was a signing at the conclusion of the instrument. And there was reason to infer, although such a signing was not necessary

to the validity of the instrument as a will, that the omission of the decedent to sign the paper in controversy, which was made on the 16th of June, 1884, as she had the preceding instrument, arose out of inadvertence, or inattention on her part. The first instrument was sent by her to the proponent, but it was not witnessed; and that created the necessity for making another, and led to the writing of the one now in litigation.

Writing the name only at the commencement of the instrument, instead of signing it at its conclusion, presented an entirely different case from those referred to. For placing the signature at the end of the instrument is an act carrying with it the assurance that it was placed there to complete and give effect to the instrument. While placing it only at its commencement may have been designed for no more than a description or reference to the person writing and intending to make the instrument. It is, at the most, uncertain and equivocal. That may have been the design of the decedent, or, by placing it there in that manner, she may have intended it for a signature to the instrument as a will. And it was to meet and determine this condition of uncertainty that the fifth issue was drawn and submitted to the jury. And when that is the description of the instrument propounded for probate, there is good reason for requiring some reference by the decedent to the name, as intended for a signature, to justify the finding of the fifth issue in the affirmative.

Before the revision of the statutes of this state in 1830, what was rendered necessary to make an instrument valid as a will was that it should be in writing and signed by the party making the same, or by some person in his presence, and by his express direction, and that it should be attested or subscribed in the presence of such party by three or more credible witnesses. 1 R. S., 1813, 364, § 2.

And by earlier legislation in England, a mere signing by the party was all that was required. This legislation was

the origin of the act just mentioned, and it was followed in other states of the union in their early legislation.

But it was changed in this state by the revision of the statutes requiring the instrument to be subscribed—that is, placing the signature at the end or termination of it; and the same change by legislation has been made in England and in other states. This legislation was, without doubt, prompted by the fact already mentioned, that writing the name at the commencement of the instrument, as it was in this instance, was not a certain indication that it was placed there, intending that it should be the signature of the party to the instrument. It was regarded as being too equivocal for the certainty required in making a testamentary disposition of property ; and owing to this uncertainty the authorities have required, where a like point has arisen in the course of litigation, that some evidence should be furnished to maintain the instrument as a will, by proving the fact to be that writing the name in the body of the instrument was intended to be the signature of the party whose name was so written. This was considered to be the law in Ramsey v. Ramsey (13 Grat. 664) and Catlett v. Catlett (55 Missouri, 330). The same subject was generally examined in Adams v. Field (21 Vt. 256) and Armstrong v. Armstrong (29 Ala. 538).

But there no acknowledgment was required to be made of the name as a signature to sustain the instrument as a will ; but in this instance an acknowledgment of the name itself, as a signature, was considered to be requisite to sustain the instrument as a will, and for that reason the fifth issue was propounded to meet this necessity. And in the *Matter of* the Will of McElwaine (3 C. E. Green, N. J. 499), it was held that proof of compliance with the four requisites mentioned in the New Jersey statute was essential to sustain an instrument as a will ; and this was sanctioned and followed in 15 N. J. Eq. 290, 293, holding where there was no attestation clause, as there is none in

his case, that proof of the requisites mentioned in the statute must be made.

The same conclusion was followed in Allaire *v.* Allaire (37 N. J. Law, 312, 326; affirmed, 39 Id. 113). And there is certainly good reason for requiring as much as that, in order to establish this equivocal writing of the name as a signature. It may or may not have been so designed. And evidence to prove that it was so intended, is required by this issue, as well as these authorities, to be supplied by the proponent. A similar view of the law was taken in the decision of Remsen *v.* Brinckerhoff (26 Wend. 325), when in the opinion of NELSON, C. J., it was said that "four distinct ingredients, as declared, must enter into and together constitute one entire complex substance essential to the complete execution.

" *First.* There must be a signing by the testator at the end of the will.

" *Second.* The signing must take place in the presence of each of the witnesses, or be acknowledged to have been made in their presence.

" *Third.* The testator, at the time of signing, or acknowledging, the writing, shall declare it to be his last will; and,

*Fourth.* There must be two witnesses. Now, it is obvious that every one of these four requisites, in contemplation of the statute, is to be regarded as essential as another, that there must be a concurrence of all to give validity to the act, and that the omission of either is fatal." Id. 331. The case, in this respect, applies the law even under the present statute of this state, in the same manner as it was sanctioned by these decisions of the court of New Jersey, And this was further followed in Lewis *v.* Lewis (1 Kernan, 220). In the course of the decision of that case, all the statutory requisites were required to be observed and proved, as they were by the decision of the case last referred to. And it was held that, " the formalities, prescribed by statute, must be observed, and the attesting wit-

nesses must be informed at the time, and by the testator, or in his presence, and with his assent, and have a knowledge of all the facts necessary to a due execution and publication of the will, and to which they are called to attest. If the party does not subscribe in their presence, then the signature must be shown to them and identified, and recognized by the party, and in some apt and proper manner acknowledged by him as his signature." Id. 225. And the same rule was as distinctly announced in the decision of Sisters etc., v. Kelly (67 N. Y. 409, 413). And there was no departure from it, as to an instrument of this description, by either of the later decisions of the court of appeals, or the decision made in Baskin v. Baskin, (36 N. Y. 416). Neither was there in Matter of Austin (45 Hun, 1; 4 N. Y. State Rep. 666); for it there appeared, as a matter of fact, that the decedent had subscribed the instrument, and that his signature, so appended, was in plain sight when the witnesses were asked to subscribe it as a will.

In Matter of Hunt (42 Hun, 434; 3 N. Y. State Rep. 346), the facts were substantially the same. And Matter of Beckett (103 N. Y. 167), sanctions no departure from the rule previously announced, where the instrument has not been subscribed by the decedent as it was not in this instance. As to this class of cases, no disposition has been manifested anywhere to relieve the case. from the observance of the rule declared and sustained by these earlier authorities. What that rule requires, and was required to justify, the answer which was given to the fifth issue, is some proof on the part of the proponent that the name written in the instrument in this manner, was so written for, and intended as, the signature of the decedent. There was no such proof in this case as this issue required to be submitted, and the verdict of the jury, answering that as they did, was unwarranted, and should be set aside. The other answers were sufficiently sustained by the evidence to support the conclusions of the jury. And it will simplify

a further trial and disposition of the fifth issue, to require only that particular issue to be again submitted to and decided by a jury. It will simplify the evidence, as well as the inquiry required to be decided, which in this instance, was complicated and obscured by the intricate requests made to the court for further directions, after the charge had been clearly given to the jury. By trying this issue separately from the others, this obscurity will necessarily be avoided, and the jury will be able, intelligently, to apply the evidence to its disposition, which they do not, so far, appear to have done, and the court can require such an answer as will be consistent with and supported by the proof.

Section 2588 of the Code requires the questions of fact arising in this controversy to be tried by a jury, and they must accordingly be so disposed of. But an answer, unsupported by proof, has not been permitted to be given and, after a trial has taken place, it has been declared that a new trial may be granted, as prescribed in section 2548 of the Code. This section, 2548, has empowered either the surrogate, or the court in which the trial has taken place, to order another trial. And as the trial took place at the circuit, the supreme court has also been authorized to direct another trial of the issues. These sections supplied ample authority for the court, before which the trial took place, to entertain the motion, which was made upon its minutes, for a new trial, and as to this issue the motion should have been allowed to prevail, for as the evidence did not tend to prove the fact that writing the name of the decedent as it was written, was stated or acknowledged to be her signature to the instrument, the jury were not warranted in returning the answer which they did.

The order from which the appeal has been taken should, accordingly, be so far reversed, with costs to the appellant to abide the event, as to direct the further trial of this fifth

issue, and to deny the motion as to the other issues which have been answered by the jury.

It being apparent from the answer given by the jury to the fifth issue that they were prepared to find a verdict unsupported by evidence, they certainly were not in a condition of mind to render an impartial verdict as to the fourth issue, and, therefore, a new trial should be granted as to all the issues.

VAN BRUNT, Ch. J., and BARTLETT, J., concur.

Motion on behalf of Joseph A. Booth, contestant, for a new trial on a case containing exceptions.

*B. F. Watson,* for contestant.

*J. Steward Ross,* for proponent.

DANIELS, J.—The motion for a new trial has been made and brought to a hearing upon the same evidence and objections presented in support of a like motion before the judge presiding at the trial of the issues to set aside the verdict and direct a new trial. It has been held, as it was upon a preceding appeal, that the motion could regularly be brought on either before the judge presiding at the trial, or at a special term, under the practice prescribed by section 2588 of the Code of Civil Procedure, and the other section therein referred to. On an appeal from the order denying a new trial, the case has again been examined and its proper disposition thereupon indicated. That entirely dispenses with the consideration of this application, which, under the circumstances, should be dismissed, without costs.

I do not find that under section 2548, the circuit court had any power to entertain a motion for a new trial.

In case of a trial at the circuit, of issues framed, the motion for a new trial must, it seems to me, be made in the supreme court.

VAN BRUNT, Ch. J., and BARTLETT, J., concur in the result.

Motion for judgment upon the issues tried before and answered by the jury in this case.

*J. Stewart Ross*, for proponent.

*B. F. Watson*, for contestant.

DANIELS, J.— This application has been prematurely made. The case is not in a condition for its consideration by the court until the issues themselves, upon which the instrument propounded as a will has been made dependent, shall be finally disposed of by the court. Such a final disposition has not yet been reached, and this application accordingly should be denied, without costs.

VAN BRUNT, Ch. J., and BARTLETT, J. 5 concur.