to prove the will on trial of an action." *Held*, that where the handwriting of a deceased witness is proven, and that the deceased witness wrote the name of testatrix, who signed by her mark, and the surviving witness testifies that he saw testatrix take the pen in her hand, and "sit down to the table and put the pen upon the paper," the execution of the will is sufficiently shown.

2. SAME—PROOFS OF PUBLICATION.

2 Rev. St. p. 63, (8th Ed.) p. 2547, § 40, providing for the execution and publication of a will, requires that "the testator shall, at the time" of executing the will, "declare the instrument, as subscribed and acknowledged by him, to be his last will and testament," and there shall be at least two attesting witnesses, each of whom shall sign his name as such "at the request of testator." *Held*, that the publication of a will is sufficiently established where it appears that testatrix acknowledged to the witnesses that she had heard the will read, and it was signed by the attesting witnesses in testatrix's presence, though at the request of the scrivener.

Application for the probate of the will of Sarah Kane, deceased. Decree admitting the will.

*C. P. Hoffman*, for proponent. *Arthur S. Tompkins*, for contestant. *Andrew Tallon*, special guardian.

WEIANT, S. The only questions raised by the contestants relate to the proper execution of the will. It is well settled that, to entitle a will to be admitted to probate, the statute must be fully complied with; and, while courts have differed as to the interpretation, construction, and application of the statute, they have agreed that the formalities and requisites thereof must be observed. The difficult question usually is as to whether or not the facts bring the case within a substantial compliance with the statutory requisites. Every last will and testament must be executed and attested in the following manner: (1) It shall be subscribed by the testator at the end of the will. (2) Such subscription shall be made by the testator in the presence of each witness, or shall be acknowledged by him to have been made by him to each of said witnesses. (3) The testator shall, at the time of making such subscription or acknowledgment, declare the instrument as subscribed or acknowledged by him to be his last will and testament. (4) There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator. 2 Rev. St. p. 63, (8th Ed.) p. 2547, § 40.

Now, it is claimed by the contestants in this matter that the evidence does not establish a substantial compliance with the statute in the following particulars: (1) That the testator did not sign the will; (2) that, if she did, she signed before the witness Horgan; (3) that she did not publish the paper as her last will and testament; (4) that the witness Horgan was not requested by the testator to become an attesting witness; (5) that the testatrix did not subscribe the will in the presence of the witness Horgan.

The subscribing witness Stephens is dead. His handwriting is proven, not only that of his two signatures as a witness, but also that the written portions of the will are in his writing. The attestation clause has recited therein a compliance with all of the above statutory requirements. He filled it out and signed his name to it. He was cognizant, then, of its contents, and, having charge of the execution of the will, it must fairly be presumed that he saw that these requirements were followed. So far, then, as a deceased witness may speak, he attests a due subscription of said will by the testatrix, and a full compliance with all other statutory requirements. "A regular attestation clause shown to have been signed by the witnesses, and corroborated either by the circumstances surrounding the execution of the instrument, the testimony of other witnesses to the fact of due execution, or other competent evidence, has been held in many cases to be sufficient to establish a will signed by the testator, even against the positive evidence of the attesting witnesses to the contrary." *In re Cottrell's Will*, 95 N. Y. 329–335. The testimony shows that Stephens was a justice of the peace, and had been one for a great number of years, and that, as such, he had experience in drawing wills, which it is proper to infer includes also the conducting of the execu-

tion thereof.   This was always considered to afford a strong presumption or compliance with the requirements of the statute in relation to the execution of wills.   *In re Cottrell's Will, supra,* 339.   This presumption also prevails as to the order of observance of the requirements of the statute.

The testimony of the surviving witness, Horgan, as to the subscription by the testator, is corroborative in some particulars, and as to such matters as he does not speak of, the presumption may fairly stand as unchallenged. Horgan testifies as to the signing by the testatrix, as follows: "I saw her put her hand to the pen, and I could not say whether she wrote or not, but it is my belief she did write it, but I could not say.   That is my impression.   I saw the pen in her hand, and I saw her sit down to the table and put the pen upon the paper; she took hold of the pen."   In answer to another question he testified that he saw her sign her name to it.   The testimony of this witness also shows that, when he went into the house of the testatrix on this occasion, the witness Stephens was at a table in one room with papers before him; that the testatrix was in an adjoining room, with the door open; that the testatrix was called in; that the witness Horgan was sitting at the table; that the testatrix came in by the table, and then signed as above.   I think that this testimony, in connection with the presumptions to which I have called attention, together with such reasonable inferences as may be indulged from an inspection of the instrument itself, lead necessarily to the conclusion that the testatrix signed the will by making her mark where it appears at the end thereof, and in the presence of both witnesses.   Witnesses testify that all written parts of the instrument, including the attestation clause and the words "her" above and "mark" below the cross mark, are in the handwriting of the witness Stephens.   The witness Horgan saw the testatrix writing on the instrument; if so, then it seems that she must have necessarily made the mark.

But it is claimed that the testator signed her name after the witness Horgan.   Horgan does so testify.   I think, however, he is mistaken.   The presumption is otherwise.   He testifies that the witness Stephens signed once before him.   I am quite positive that he is in error.   I have examined the overlapping parts of the signatures with a magnifying glass, and such an examination shows very clearly that both of Stephens' signatures were made before those of Horgan.   This shows that Horgan's recollection of the particulars and the order of their occurrence, after the lapse of so many years, may be somewhat obscured and incorrect.   He signed twice,—once opposite the testatrix's signature, and a second time beneath the attestation clause. Now, if it were true that he signed before the testatrix, then he must have signed his name opposite the place of the testatrix's signature, when that place was blank, which is rather an unreasonable thing for him to have done, or that he should have been asked or permitted to do by one having experience in the execution of legal documents, such as Stephens had.   *In re Look,* 5 N. Y. Supp. 50.   The signature of the testator, preceding that of the witness in point of space, is presumed to have been made first in point of time. *In re McMulkin,* 6 Dem. Sur. 347.

As to publication by the testatrix of the instrument in question, and the request that Horgan should become an attesting witness, I am of the opinion that the evidence shows a substantial compliance with the statutes.   Upon proof of the signature of a will, and an attestation clause full in its recitals of compliance with the statute, as in this case, the presumption of due execution would carry the will to probate in the absence of any recollection of the circumstances by the surviving witness.   *In re Pepoon,* 91 N. Y. 255.   Now, I do not find anything in the testimony to overthrow this presumption, while, on the contrary, in some particulars, I find evidence confirmatory of the same. The witness Horgan testifies that George Kane, the son of the testatrix, came to the store of the witness, and asked him if he would come up and be a witness to his mother's will; that she was to make a will, and she asked him "to

come down and see if I would come up. * * * 'The squire is at the house now.'' He came down a second time, and I went up with him. When I got there, the squire, Peter Stephens, was there in the front room. He had papers before him; and Mrs. Kane was in the inside room. I went into the room where Squire Stephens was sitting. Everything was ready. I just sat down. * * * He said: 'I sent for you to be present at the signing of the will;' and he called for Mrs. Kane, and she came out of the room, and he said: 'Mrs. Kane, you heard this will read?' and she said, 'Yes;' and he said, 'Sign it;' and I signed it, and said, 'Mrs. Kane, you sign it;' and she signed it, and I left. *Q.* You were asked to sign it by Mr. Stephens? *A.* Yes, sir. *Q.* Did Mrs. Kane say anything about it? *A.* Not a word that I remember. He asked us to sign it, and we did. *Q.* And she did not ask you to sign it as a witness? *A.* Mr. Stephens did. I don't think she did. I saw Mrs. Kane in the adjoining room; the doors were all open. *Q.* So you could hear any conversation between persons in the two rooms? *A.* Yes, sir. *Q.* Squire Stephens told you what you were wanted for there? *A.* Yes, sir. Well, he said simply, 'Mr. Horgan, sign this will. Witness this will.' I understood it was Mrs. Kane that wanted me to do it. The next thing, Squire Stephens called for her to come into the room, and he said to her, or he asked her, 'Mrs. Kane, you have heard this will read?' She said, 'Yes, sir,' she had heard it read, and Mrs. Kane came in by the table where Squire Stephens was sitting. He [Squire Stephens] said, 'Mrs. Kane, we are ready for you to sign it now.'"

Then the execution and attestation immediately followed. This testimony, with other facts and circumstances in evidence, together with the presumptions arising from the recitals in the attestation clause of publication and request, and from the fact that the execution of the will was conducted by one having knowledge of the requirements of the statute to constitute a due execution, establish a publication and request that satisfy the legal requisites. No particular form of words is required to constitute a due publication and request. *In re Hunt,* 110 N. Y. 278, 18 N. E. Rep. 106. It is a substantial compliance with the statute if, in some way or mode, the testator indicates that the instrument the witnesses are requested to subscribe as such is intended and understood by him to be his executed will. Id. The legislature only meant there should be some communication to the witnesses indicating that the testator intended to give effect to the paper as his will, and that any communication of this idea or to this effect will meet the object of the statute; that it is enough if in some way or mode the testator indicates that the instrument the witnesses are requested to subscribe as such is intended or understood by him to be his will. The word "declare" is said to signify "to make known, to assert to others, to show forth;" and this in any manner, either by words or acts, writing or in signs; in fine, that to declare to a witness that the instrument described was the testator's will must mean to make it at the time distinctly known to him by some assertion or by clear assent in words or signs. *Lane* v. *Lane,* 95 N. Y. 494-498. And publication and request may be incorporated in the same words and acts. *Coffin* v. *Coffin,* 23 N. Y. 9.

Within these authorities, and the construction there given to the statutes, I have no hesitation in arriving at the conclusion that the evidence shows a due publication of the will and a request to the witnesses. The witness Stephens, at the request of the testatrix, drew the will, and in her presence. The instrument thus prepared was spoken of by Stephens to her, and in the presence and hearing of the other witness, when all three were present, and immediately preceding its execution and attestation; thus showing beyond a doubt that the paper she signed was known to her at the time to be her will, and that she intended giving it effect as such. The witness Stephens in this matter must be deemed to have been her agent in all that he did in the preparation and execution of this will. The evidence calls for the finding of

such authority. His request to the witness Horgan, and whatever else he said to that witness in the presence of the testatrix, or that may reasonably be inferred to have been said or done in her presence, in reference to the will or as to his becoming a witness thereto, should be considered as said or done by her. The words of request or acknowledgment may proceed from another, and will be regarded as those of the testator, if the circumstances show that he adopted them, and that the party speaking them was acting for him with his assent. *Gilbert* v. *Knox*, 52 N. Y. 125.

Upon the entire proof in the case, and guided by the authorities giving construction to the statute, as also by those establishing inferences and presumptions, and touching the force thereof, as connected with the execution and attestation of wills, I am convinced that a fair and substantial compliance with the statutory requirements has been shown, and that the instrument should be held to have been duly executed, published, and attested as the will of the testatrix. The cases cited by the contestant's counsel are not in conflict with this conclusion, as each is distinguishable upon the facts and circumstances. In *Re McMulkin*, 6 Dem. Sur. 347, there was no attestation clause. In *Re Sarauw*, (Surr.) 2 N. Y. Supp. 629, the persons having charge of the execution of the will were inexperienced in the matter of wills, and I think it may be inferred that there was no attestation clause. In *Walsh* v. *Laffan*, 2 Dem. Sur. 498, the paper was not referred to as a will by the testatrix, or by either of the witnesses, nor did either of the three use words or expressions asserting, or even intimating, that the instrument was of a testamentary character. In *Re Booth*, (Sup.) 6 N. Y. Supp. 41, the will was executed in New Jersey, where a will is not required to be subscribed or signed at the end thereof. It was sought to establish the will by proving the name of the testatrix in the first line of the instrument, as an execution thereof. But, notwithstanding I have reached the conclusion that the evidence establishes a due publication, execution, and attestation of this will, the counsel for the contestants claim that, the testatrix having subscribed the will by mark, the will cannot be admitted to probate (one of the witnesses being dead) without the testimony of another witness, who saw the testatrix make her mark, and confronts me with authorities which appear to sustain his contention. He cites *In re Walsh*, 1 Tuck. 132; *In re Reynolds*, 4 Dem. Sur. 68; *In re Phelps*, 5 N. Y. Supp. 270; *Worden* v. *Van Gieson*, 6 Dem. Sur. 237. That is not my understanding of the law, and, as far as my observation has gone, it is contrary to the usual practice.

If it be true that no will signed by mark can be admitted to probate without the testimony of two witnesses who saw the testator make the mark, then very many wills so signed must and will fail of probate, for it is a matter of frequent occurrence that one of the subscribing witnesses is dead or beyond the reach of the court, and it is usually the case that no other persons are present at the execution of a will than the testator and attesting witnesses. Such a construction of the statute applies one rule to wills subscribed by a testator who can write, and another to one who cannot do so. This should not be the case, unless clear words to that effect appear in the statute. The statute makes no such distinction, and there are no words therein that will authorize such a construction. The rule is uniform as to all written wills, however subscribed.

Section 2620 of the Code of Civil Procedure provides: "If all of the subscribing witnesses to a written will are, or if a subscribing witness whose testimony is required is, dead or incompetent, by reason of lunacy or otherwise, to testify, or unable to testify, or if such a subscribing witness is absent from the state, or if such a subscribing witness has forgotten the occurrence or testifies against the execution of the will, the will may nevertheless be established upon proof of the handwriting of the testator, and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will upon trial of an action." This section received a practical

construction in *Brown* v. *Clark*, 77 N. Y. 369; *In re Pepoon*, 91 N. Y. 255; and *In re Cottrell's Will*, 95 N. Y. 329,—and was held to mean, in accordance with prior decisions cited, "that the proof of circumstances bearing upon the question of the authority of the will, in connection with a regular attestation clause duly executed, were, if sufficient to satisfy the court of its genuineness, all that was required to sustain the probate of the will." *In re Hesdra*, 119 N. Y. 615, 23 N. E. Rep. 555.

If the word "handwriting," as used in section 2620 above, is to receive the narrow construction of meaning one who can write, then, as already stated, almost every will signed by mark, where a subscribing witness is dead, must fail of probate; and we shall have one rule as to written wills signed by one who writes his name, and another as to such wills as are subscribed by one who makes his mark. I am not disposed to adopt such a construction. It is my opinion that the word "handwriting" signifies, as here used, the subscription of the testator to the will, whether it be by writing or otherwise. It implies the characters by which he subscribed the will. When this provision of the Code was enacted, it was established as unchallenged law that a will could be legally subscribed by mark as well as by writing the name, (*Jackson* v. *Jackson*, 39 N. Y. 153,) and if any distinction was intended, dependent upon the method of subscription or signing, the legislature would have so clearly provided. Nor is there any force in the criticism that a mark does not permit of identification, and therefore there can be no proof of the handwriting, where a witness can testify to having seen the mark made. Cases may arise where a will might fail of probate in the event that no witness can be produced to testify to having observed the mark made, but it is not a failure to prove the handwriting where any witness is produced who saw the subscription by mark. It surely is proof of a testator's handwriting when a witness testifies to having seen it made, and it is generally more satisfactory and convincing than when testimony is given, as matter of opinion, by one who did not observe the writing done. In making provision for the establishing of a will in cases arising under section 2620 of the Code, the legislature imposed no limitation or restriction as to the method by which or witnesses by whom the "handwriting" might be proven. These were left to the general rules of evidence and the qualifications of witnesses, as embodied in the common and statutory law. I am unable, therefore, to understand why a surviving attesting witness may not establish the subscription of a will by a testator where he sees the signing done, if his testimony convinces the court of its truthfulness, and as well where the signing by the testator is by mark as by writing his name. Now, if the authorities cited by the contestants' counsel are sound, then this will must fail of probate, even though a subscribing witness testifies to having seen the subscription made, and yet, had the execution been by a testatrix who could write her name, upon the same evidence the will could be lawfully admitted to probate. Such a construction of the statute should not be adopted as would incorporate therein such a distinction. An interpretation of the statute that requires proof of the signing by mark from some person other than a subscribing witness, where, as here, one of the attesting witnesses is dead, is equivalent practically to requiring an execution of such a will before more than two witnesses, in order to secure its probate, and this the statute does not require. The conclusion at which I have arrived has not been reached without hesitation, as it appears that the same is adverse to that of learned and experienced surrogates. From the report of the case of *In re Reynolds*, 4 Dem. Sur. 68, however, it does not appear that the surviving attesting witness gave testimony of his having observed the testator make his mark, and the authority may not, therefore, be adverse. The following authorities sustain the construction which should be given to section 2620 of the Code that I have adopted: *In re Simpson*, 2 Redf. Sur. 29; *In re Dockstader*, 6 Dem. Sur. 106. Let a decree be entered, admitting the will to probate, with costs to the proponent.