compliance with the statute? The only reply that can be given is: When the testator signs his name. This is a dangerous construction of the statute. May the testator keep these signatures in his possession one hour, one week, or one year, and then add his signature? Certainly not, unless he summons the same persons to see him sign, or hear his acknowledgment thereof."

From the last sentence quoted, it is obvious that, in the personal opinion of the judge who wrote, the result would have been otherwise, if, after the signatures of the testator and the witnesses, there had been a further publication and request followed by the adoption of the witnesses' former signatures both by themselves and the testator.

The evidence in the case at bar does not permit a finding that these two attempts at will making constituted a single occasion, for there was a distinct break in the transaction between the original signing of the will and the final effort to cure the deficiencies which first existed; nor is the probate ended by the decisions that the acts prescribed by the statute of wills need not always be done in the order usually and properly observed. If the witnesses did not sign their names after the testatrix had signed and after her publication and request were made in their presence, then they did not ever sign as witnesses for the purposes of the statute, for the only request and the only attestation of which the circumstances permit, and in fact the only observance of any kind which took place in the presence of both witnesses, must have come to pass after the acknowledgment by the testatrix and her subscription formerly made.

The cases cited indicate that, where the signatures of the testator and of the witnesses all appear upon an instrument which has not yet been properly executed and attested, the witnesses may be said to have signed as such for the purposes of the statute if, as a new transaction, the testator acknowledges his signature, declares his will, and requests the witnesses to attest the same, and the witnesses thereupon, to the knowledge of the testator, accede to his request and adopt their previous signatures as an attestation of the transaction.

The law in its zeal for probate could not go much further, but authority justifies the admission of this will. It will be decreed accordingly.

Probate decreed.

---

(63 Misc. Rep. 169.)

## In re ABEL'S WILL.

(Surrogate's Court, Kings County. April, 1909.)

1. WILLS (§ 304*)—PROBATE—PROOF OF HANDWRITING.

On the death of all the subscribing witnesses, and in many other instances mentioned in Code Civ. Proc. § 2620, where their testimony is not available, or is hostile, the will may be established upon proof of the handwriting of testator and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will upon the trial of an action.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 724–728; Dec. Dig. § 304.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. WILLS (§ 222*)—ESTABLISHING—WHAT CONSTITUTES—"ESTABLISH."

To "establish" a will is to make it the subject of such proof and finding as will entitle it to probate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 542; Dec. Dig. § 222.*

For other definitions, see Words and Phrases, vol. 3, p. 2473.]

3. WILLS (§ 289*)—PROBATE—PRESUMPTION.

Proof of the genuineness of the signatures of testator and of the subscribing witnesses raises a presumption that all the statutory formalities essential to the valid execution of a will were duly observed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 653; Dec. Dig. § 289.*]

4. WILLS (§ 302*)—PROBATE—ATTESTATION CLAUSE.

An attestation clause, reciting the formalities essential to the due execution of a will, is not evidence that such formalities were in truth observed, but simply that the witnesses seem at the time to have said that such formalities were observed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 705; Dec. Dig. § 302.*]

Application for the probate of the will of Mary E. Abel, deceased. Will admitted to probate.

Charles H. McCarty, for proponent.
Francis X. Carmody, for contestant.

KETCHAM, S. A document is offered for probate after the death of three persons whose signatures appear as witnesses, at the end thereof, after the signature of the alleged testatrix. The instrument was made and witnessed on May 1, 1894, and is in all respects in the form of a will. There is no attestation clause, except that, immediately above the names of the witnesses, the word "witnesses" is written.

The handwriting of the decedent and all the subscribing witnesses in the signatures referred to is established. It is affirmatively shown that, at the time of the transaction, the decedent was competent to make a will and was under no restraint. The instrument was written by the husband of the decedent. He was allowed by the contestant to testify: That his own will, also in his handwriting, was made at the same time when his wife's will was made; that his will was signed in the presence of the witnesses, the same witnesses who attested the paper propounded as the wife's will; that these persons signed as witnesses to his will, in his presence, and at his request; and that, at the time when he signed it, he declared it to be his last will and testament. Each instrument contains a general and absolute devise, in one case by the husband to the wife, and, in the other, by the wife to the husband, with substantially the same provisions in the event of the death of the devisee before the death of the testator. The husband was present when the decedent signed the paper propounded. No lawyer was then present. The husband, upon interrogation by the contestant, testifies that he consulted his wife when he was drawing the will (meaning the propounded paper), that she was perfectly agreeable, that he talked it over with her, and that it was perfectly satisfactory to her. When asked by the contestant's counsel, "Did Mrs. Abel say anything

when she signed her name to the paper?" the husband answers, "I don't remember, but I suppose she did say something."

When the instruments were signed, the wife owned the house in which she and her husband had lived for 27 years. It was worth about $7,000, and she had personal estate, worth about $1,000 more. The husband's estate was of the value of about $55,000. When the house was purchased, in 1867, there was a mortgage on it for $7,000, which the husband had paid off with his own money before the papers in question were made. The contestant was permitted to prove, without objection, that the wife once, after the execution of her alleged will, said that the house was hers to do what she wanted with, and that it was her husband's present to her, and that she frequently, both before and after the making of the paper in question, declared her intention that the house was to go to her brother and his wife. It also appears that the wife, at least once, signed a paper without reading it, upon the request of her husband and his assurance that it was all right. The wife lived for 14 years after signing the propounded instrument, and the husband testifies that, after her death, he found the paper in her private box, as he supposes. Both husband and wife were advanced in years when the two papers were signed. They had been married about 55 years. They were childless, and they lived in affection and concord.

In case of the death of all of the subscribing witnesses to a written will, as well as in many other instances mentioned in the statute, where their testimony is not available or is hostile to the fact of the will, "the will may nevertheless be established, upon proof of the handwriting of the testator, and of the subscribing witnesses, and also of such other circumstances, as would be sufficient to prove the will upon the trial of an action." Code Civ. Proc. § 2620. To "establish" a will is to make it the subject of such proof and finding as will entitle it to probate. It is in this sense that the word is used in respect to lost and destroyed wills (Code Civ. Proc. §§ 1861 et seq., 2621), as well as in the almost daily application of section 2620 to the case where, failing the testimony of the witnesses, the will is admitted by force alone of the attestation clause. Hence the will at bar will be established, and its probate must follow, if the evidence be found to be of the quality and weight which would, upon the trial of an action, sustain a finding that this was the will of the decedent.

What, then, would happen if, upon a trial in ejectment, before the court without a jury, this will were offered upon this evidence in proof of the plaintiff's title and cause of action? In such a trial the finding would be, as it is in this case, that the decedent at the time of the transaction was competent to make a will, was not under restraint, was fully aware of the testamentary nature of the instrument which she signed and of its specific tenor and purpose, and was intelligent and deliberate with respect to its execution. Whether or not, under all the requirements of the statute, the act became a will, it was surrounded by conditions fairly revealed in the evidence which expel suspicion and reduce the case to the single question whether or not proof of the genuineness of all the signatures upon the propounded paper raises

a presumption that all the statutory formalities essential to a valid will were duly observed. This presumption has always been indulged and has been held to control the question of fact, when not impaired by affirmative evidence or by suggestions of distrust and uncertainty. This rule is stated in many cases, and, while generally its expression has not been strictly essential to the decision, it has been repeated so frequently and so confidently and with such wealth of reasoning that it should now be regarded as authoritative, even if it depended alone upon obiter opinion. Jackson v. Le Grange, 19 Johns. 386, 10 Am. Dec. 237; Dan v. Brown, 4 Cow. 483, 15 Am. Dec. 395; Jackson v. Vickory, 1 Wend. 406, 19 Am. Dec. 522; Jauncey v. Thorne, 2 Barb. Ch. 40, 45 Am. Dec. 424; Butler v. Benson, 1 Barb. 526.

The ground for the proposition stated in these authorities is that all things which the testator and the witnesses have done are presumed to have been done with ceremony and with solemnity. Either they have done an idle and abortive thing, or their signatures have been made with all the purpose and the observance which would accompany and make manifest a complete and efficacious act. If, against this presumption, no fact appears which either affirmatively shows their act to have been aimless, or casts doubt upon its regularity and efficacy, the law must conclude that the act was orderly, intelligent and effective.

It is only by resort to these principles that the law lays hold of the attestation clause as a means of proof in the case grown to be familiar to the profession. Matter of Sizer's Will, 129 App. Div. 7, 113 N. Y. Supp. 210, and cases cited. This clause has no statutory dignity. It is a mere certificate by the witnesses which, without ritualistic authority, has grown into the practice of good draftsmen. It is no proof of the matters therein stated. Neither under any general rule of evidence nor under any regulation specifically applicable to wills could this clause be offered in evidence as a direct means of proving that the things therein said to have been done were in truth done. Its utmost value is only that, in a transaction which for its accuracy and perfection requires the parties thereto to do certain things, the witnesses seem at the time to have said that these things were done. From the mere naked fact that the witnesses then apparently said that the requirements of the statute were regarded, we assumed: First, that they knew and considered the statements contained in the attestation clause; and, second, that upon that assumption may be based the further one that their certificate was not only intelligent but correct. From these two assumptions it is customary to conclude that the circumstances generally justify the result that the will was duly published and attested. Is this anything except the application of the presumption that the witnesses, in signing the attestation clause, must have done so with all the circumstance which ordinarily should accompany the act of faithful witnesses? Is there any difference between the legal inference which is drawn from the attestation clause, and the like deduction which the proponent seeks to draw from the mere signing of the propounded paper, without an attestation clause?

The weight of evidence which provokes the presumption may differ in the two cases, but it is impossible to see any difference in character.

In one instance it is inferred that signatures to a statement in writing were made with all the accompaniments of regularity; in the other, that signatures at the end of a paper of testamentary nature were made under like conditions. In holding that prima facie witnesses who have signed their names at the end of a will, after the testator's name, have witnessed and heard the publication and request which properly attend the making of a will, we but apply to an act, the necessary components of which are defined by statute, the same methods which are freely resorted to with regard to an act which is not the subject of statutory recognition or direction. Indeed, there is an attestation clause upon the paper in question, in the word "witnesses." Those who signed their names thereunder have attested:

"We have witnessed the act of Mary E. Abel which she has performed in signing the foregoing instrument, and we have signed our names in attestation of that fact."

The evidence in this case being wholly consonant with testamentary intention, the fairness of the transaction, and freedom from restraint, we are forced to the conclusion, upon the mere appearance and genuineness of the signatures, that the will was accompanied by all which goes to make up a valid and efficient execution and publication.

The precise question which this will presents was before the late Surrogate Fitzgerald, and was determined in favor of probate. Matter of Oliver's Will, 13 Misc. Rep. 466, 34 N. Y. Supp. 706. It does not clearly appear from the opinion, but inquiry in the office where the will is recorded discloses, that there was no attestation clause upon the instrument which Judge Fitzgerald considered; and it is impossible to distinguish the facts there presented.

There must be the usual decree of probate.

Probate decreed.