(67 Misc. Rep. 6.)

## In re WALKER'S WILL.

(Surrogate's Court, Rockland County.    March, 1910.)

WILLS (§ 302*)—EXECUTION—SUFFICIENCY OF EVIDENCE.

A will was followed by a full attestation clause and the signatures of testatrix and the witnesses in the proper place. On proceedings for probate a subscribing witness testified that testatrix at its execution neither declared the instrument to be her will nor requested the witnesses to sign as such, but the memory of the witness was unreliable. Nineteen years had elapsed since the execution of the will which was drawn by the husband of testatrix, an attorney of experience who superintended the execution, and there was no evidence of fraud or undue influence. *Held*, that the instrument would be admitted to probate.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 302.*]

In the matter of the probate of the last will of Jennie L. Walker. Probate decreed.

Benjamin Levison (Abram A. Demarest, of counsel), for proponent. Howe, Smith & Howe, for contestants.

McCAULEY, S.    There is offered for probate in this proceeding a written instrument which bears date March 12, 1890, and purports to be the last will and testament of Jennie Livingston Walker, deceased.

The decedent died January 7, 1909, and is survived by her husband, the petitioner, a son, and two daughters. The instrument, which is in all respects in the form of a will, was written by the decedent's· husband, and he is named as the executor thereof and sole beneficiary thereunder. The son and daughters have filed an answer to the petition wherein they object to the probate upon three grounds, namely: (1) That the instrument offered for probate is not the last will and testament of the decedent, and that the execution thereof was not her free, unconstrained, or voluntary act; (2) that the instrument was not subscribed, published, and attested as and for her last will and testament in conformity with the statute in such case made and provided; and (3) that the instrument is invalid as a last will and testament and is illegal and void.

The instrument contains the usual attestation clause, which states that, upon its execution, all the statutory formalities were observed with respect to the execution of wills.

It was subscribed by the decedent in the presence of two attesting witnesses who, at the same time, in her presence and in the presence of each other, subscribed their names as witnesses. These facts were proven by the testimony of the subscribing witness who survived the decedent and are undisputed. The decedent's signature was written at the end of the instrument. Then followed the attestation clause, and the signatures of the subscribing witnesses, to which were added their respective places of residence.

The instrument was executed on the day it bears date at the decedent's home in New York City. William H. Spencer, one of the

subscribing witnesses, died prior to the decedent's death; but the surviving witness, George A. Sturtevant, was produced by the proponent, and his examination and testimony were taken upon the hearing. The proponent also produced proof of the handwriting of the decedent and of the deceased subscribing witness. The contestants produced no witnesses, but rest their case upon the facts adduced upon the examination of the surviving witness. There are, in reality, but two objections upon which the contestants rely namely: First, that the decedent did not, at the time of its execution, declare the instrument to be her last will and testament; and, second, that she did not request the two attesting witnesses to sign it as such.

The witness Sturtevant testified, among other things, that the instrument was executed in the evening in the dining room of the decedent's home; that he was requested to witness the decedent's signature by her husband, as was also Mr. Spencer, as he supposed; and that she said nothing at all to him or in his presence at the time of the execution of the instrument. He also testified that the attestation clause was not read to or by him; that he did not know, and that the decedent gave no intimation, of what the instrument was; and that she did not suggest, or in any wise manifest a wish, that he sign it as a witness. He never saw the instrument after its execution until shortly before it was offered for probate, when it was exhibited to him by the decedent's husband. The witness called frequently at the decedent's home and was on terms of intimacy with her family. He became indebted to the decedent's husband, in a considerable amount, about the time of or shortly before the execution of the instrument. This indebtedness was never paid; and some time after the execution of the instrument his visits at the decedent's home ceased, and the intimate relations which had theretofore existed were terminated. The witness, having testified, in substance, that there was no publication of the will, and that he and Spencer had attested its execution without being requested to do so by the decedent, was examined rigidly and at length with respect to various other matters having some relation to the execution of the instrument, and it was made apparent that his memory was not to be relied upon and trusted. For example, he did not remember in what part of the house he was, nor in whose company he was requested by the decedent's husband to go to the dining room to witness her signature; he did not remember whether the decedent was seated at the table or standing when she signed her name to the instrument; he did not remember why he added to his signature his place of residence and thereby fulfilled a statutory requirement; nor did he remember who took possession of the instrument after its execution or what disposition was made of it. These are but a few of many instances wherein his memory failed him. The following brief quotation from the examination of the witness will show how uncertain and unreliable his memory of the transaction was:

"Q. I want to know not what took place in the hall. I want to know what took place in the way of a conversation in the dining room between you and Mr. Walker or any other persons that were in that dining room while you were there. A. I do not recall any conversation at all, sir. Q. None at all?

A. No.　Q. You mean to say by that that none did take place, or you do not recollect?　A. I don't recollect what the conversation was.　Q. You do not state there was no conversation, do you?　A. No, I do not state that.　Q. And, if there was a conversation, you want the court to understand that you do not remember what it was; is that true?　A. No.　Q. Is that true?　A. In a measure it is true.　Q. Because whatever conversation was had in that dining room after you entered it between any of the persons that were there in your company is entirely a blank and has passed from your memory; is that true?　A. Yes.　Q. And you cannot recollect any of the conversation at all?　A. I said so.　Q. Then all you say and all you remember as to what took place in that dining room, as far as your recollection aids you at the present time, are the acts that were performed by the various parties?　A. Yes.　By the Surrogate:　Q. What I want to know, Mr. Sturtevant, is this: May it or may it not have been possible for things to have transpired there at the time of the execution of the will as to which your memory would fail to serve you; a period of 19 years having elapsed meanwhile?　A. Oh, there may have been, but the things that appeal to me I remember. The things that have a vital interest to me; those are the things that I have thought of and recall."

The evidence of the witness is to some extent contradictory, and is uncertain and unsatisfactory; and, after a careful consideration of it, having in mind the long period of time, namely, 19 years, that has elapsed since the transaction to which it relates occurred, I am led to the conclusion that his statement that there was no publication of the will cannot be relied upon, and I am unwilling to accept it as true.

There are several facts which tend to show that there was a proper execution of the will. It was drawn by the decedent's husband, an attorney of some 40 years' experience, who knew what the statutory requirements were, and who had appended to the will an attestation clause that was full and explicit. He was present when the will was executed and superintended its execution. These facts afford a strong presumption that the statutory requirements were complied with. There is no evidence of fraud or undue influence. My conclusion, upon all the evidence, is that the will was published and attested as required by law; and that the witness Sturtevant has forgotten or errs in his recollection of the occurrence.

The statute (Code Civ. Proc. § 2620) provides that:

"If all the subscribing witnesses to a written will are, or if a subscribing witness, whose testimony is required, is, dead, * * * or if such a subscribing witness has forgotten the occurrence, or testifies against the execution of the will; the will may nevertheless be established, upon proof of the handwriting of the testator, and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will upon the trial of an action."

This section received a practical construction in Brown v. Clark, 77 N. Y. 369, Matter of Pepoon, 91 N. Y. 255, and Matter of Cottrell, 95 N. Y. 329, where it was held to mean, in accordance with prior decisions cited that the proof of circumstances bearing upon the question of the authenticity of the will in connection with a regular attestation clause, was, if sufficient to satisfy the court of its genuineness, all that was required to sustain the probate of a will. It was accordingly held in the Cottrell Case that a will may be admitted to probate against the positive testimony of both the attesting witnesses

that they were not present when it was executed and did not sign as witnesses, if the genuineness of their signatures to the attestation clause and of the testator to the will is proved by other evidence; and, also, that it is always considered. to afford a strong presumption of a compliance with the requirements of the statute in relation to the execution of wills that they had been conducted under the supervision of experienced persons.

The precise force which should be accorded to a full attestation clause, regularly authenticated, is not very clearly defined in the cases; but they all agree in the conclusion that it is entitled to great weight in the determination of the fact involved. Orser v. Orser, 24 N. Y. 55; Matter of Hesdra, 119 N. Y. 615, 23 N. E. 555; Matter of Kane, 20 N. Y. Supp. 123.

It has been held that mere want of recollection on the part of the witnesses will °not invalidate the instrument, and the courts, in establishing the wills propounded, have done so upon the ground that they were satisfied from the circumstances proved that the wills were duly executed and that the witnesses had forgotten, thus relieving the parties ·interested against the infirmities of humanity and the uncertainty of human recollection. Lewis v. Lewis, 11 N. Y. 220.

In the case of Woolley v. Woolley, 95 N. Y. 231, cited by the learned counsel for the contestants, the court, in commenting upon the evidence on which probate had been denied, drew a very clear distinction between a will executed within a recent period before it was offered for probate and one offered for probate a long time after its execution. On page 234, the court observes:

"This evidence was given within about a year after the alleged codicil was executed, and hence the case is not to be treated like one where an attempt is made to prove a will after the lapse of a long time, when witnesses may not be able to testify fully to the statutory requirements from a failure of memory. In such case a regular and full attestation clause, with. very slight proof or confirmatory circumstances, may be held sufficient."

In Matter of Sizer, 129 App. Div. 7, 113 N. Y. Supp. 210, recently decided, and affirmed on appeal by the Court of Appeals, without opinion (195 N. Y. 528, 88 N. E. 1132), the will was offered for probate upward of eight years after its execution. There were three attesting witnesses, two of whom testified that they .had no recollection of signing the will, or of being asked to, or of anything connected with it, but acknowledged their signatures to be genuine. The witness who signed last (the third witness) testified that he did not know what the paper was, and that the testator did not say. The will contained a full attestation clause. The court, in commenting upon the evidence upon which the will was admitted to probate, at page 9 of 129 App. Div., at page 212 of 113 N. Y. Supp., says:

"In the present case, therefore, the surrogate was permitted, the recollection of the subscribing witnesses failing, to resort to such other evidence as is receivable in an action. He had before him a full. attestation clause and proof of the signatures of the testator and the subscribing witnesses. Was this alone evidence of the execution of the will with the formalities required by law? It was. There is no requirement of an attestation clause, but it is nevertheless recognized as evidence by the courts, and received, when nec-

essary, and, after proof of the signatures of the testator and the subscribing witnesses, as prima facie evidence of the facts certified by it. On examining the cases in this state, it will be found that many of them say that the attestation clause, with proof of the signatures of the testator and the witnesses, 'and other facts and circumstances' proved in the particular case, sufficed for the probate of the will; but from this the negative, that such clause and proof of signatures alone would not have made out a prima facie case, and upheld the probate, must not be drawn. * * * Though the cases are few in this state where the court was called upon to say and did say that the attestation clause with proof of the signatures was alone evidence of formal execution, or made out a prima facie case, an analysis of all the cases in this state will show that rule to be generally recognized; and there is abundance of authority for it elsewhere, in England and in our states."

See, also, cases cited on page 10 of 129 App. Div., page 213 of 113 N. Y. Supp.; Matter of Abel, 63 Misc. Rep. 169, 118 N. Y. Supp. 429.

With respect to the publication of a will, it has been held that no particular form of words is required; a substantial compliance with the requirements of the statute as to execution and attestation is sufficient. Lane v. Lane, 95 N. Y. 494; Matter of Beckett, 103 N. Y. 167, 8 N. E. 506; Matter of Hunt, 110 N. Y. 278, 18 N. E. 106.

Will admitted to probate. Formal findings may be presented with the decree.

Probate decreed.